Battle, J.
 

 Upon the first question argued before us by
 
 *365
 
 •the counsel, we entertain no doubt. The terms of the bequest to the children of the defendant, Nicholas L. Williams, import a present gift, though the slaves were not to be allotted to ■them and put into their possession, until’ they should respectively come of age. In the -meantime, the profits were to be applied towards their education, and the provision in favor of the father, that he was not to be accountable to his children -during their minority, cannot have the effect contended for by the counsel for the plaintiffs, of preventing the legacy from being vested. The case of
 
 Anderson
 
 v. Felton, 1 Ired. Eq., 55, relied upon by the counsel, in support of the view that the legacy to each child was contingent upon the event of his living to attain the age of twenty-one years, depended upon ' very peculiar language of the will, as appears, not only from the opinion of the court-in the case itself, but also from the comments upon it in other cases, in which it has been cited. See particularly,
 
 Devane
 
 v. Larkins, 3 Jones’ Eq. 377. The The legacy having been vested in the children of the defendant, Nicholas L. Williams, who were living at the testator’s death, the share to which his daughter, Mary Lewis, was entitled, devolved, upon her death, to him, upon his taking out ■•letters of administration upon her estate, and of course will "belong to him as her next of kin.
 

 The question of emancipation, which pulses upon the construction of the will, is one of much more importance and difficulty. It has been ably argued by the counsel who oppose tiie claim of the slaves to be set free in the manner and upon the terms prescribed by the testator, and we regret that we have net been favored with an argument-from the public officer who was made a party to the suit for the .purpose of protecting the rights and interests of the slaves. The clauses of the will which relate to the question which we are now to consider,.are as follows: “ In the next place, it is my will and desire, that all my negroes who are under 25 years should, when they arrive at 25 years of age, be emancipated and sent to Liberia, on the-coast-of Africa, provided, they should choose to be emancipated and sent to Liberia, their choice or option
 
 *366
 
 in the matter is-, to be ascertained by a private examination by three' justices ©f the peace,, to be appointed for that purpose by the county court of Surry. If the said negroes should not choose to be emancipated and sent to Liberia, in the manner above pointed; out, then they shall be held in trust by my brother, N. L.. Williams, for the use and benefit of his children,” &c. “My reason for making the distinction, between the negfoes above 25 years of age, and those who are under that age, is,, that those over 25 years would not, perhaps, better their condition in life, and they might be too sickly if sent to Africa, while those under 25 years of age, might be less sickly, and might make out better in Africa.” “ Sixth, The issue,, or increase, of my negroes, as well of those over 25 years as of those under ^5 years, are all to be emancipated and sent to Liberia, if they choose to go, and consent to- go, to be ascertained by private examination, in the manner before pointed out, after they shall arrive at 25 years of age.”' The testator then provides,, that if the laws of the State prohibit emancipation, so that his will could not be carried into effect, the negroes should go-to his brother, upon the same trust as he had already prescribed for his slaves who were above twenty-five years of age.
 

 The objections- to the provisions in favor of the emancipation of the testator’s slaves, who were under the prescribed age, are» mainly of three kinds.
 
 First,
 
 because itr is against; the policy of our law, to establish a nursery of young negroes with a view to their being emancipated at a certain age, if they should so desire.
 
 Secondly,,
 
 because the sixth clause of the will created a perpetuity, which our law abhors and wilt not permit to be carried into effect.
 
 Thirdly,
 
 because, with regard to- most, if not all the slaves embraced in the provision-for the emancipation, the will cannot be carried out in the manner prescribed without great difficulty, and without doing violence to the- lira mane wishes which the testator has expressed in favor of all his slaves.
 

 In the discussion: of the first ©f these objections, it should-be assumed, as the settled few of this. State-,, that a. G&esti&r,.!
 
 *367
 
 contained in a will, for the liberation of a single slave, or of a' family of slaves, at some future prescribed time, is’legal, and? may be carried into effect by the executor or orther person» charged with the duty. Thus a testator, grantor, or donor may, by will or deed, bequeath or convey slaves to a person for life, and direct that at his or her death, they shall be emancipated. It should also be assumed, that the boon- of freedom-may be left to the election of the slaves themselves. See among others, the recent cases of
 
 Caffey
 
 v.
 
 Davis,
 
 1 Jones’ Eq. p. 1;
 
 Cromartie
 
 v. Robinson, 2 Jones’ Eq. 218;
 
 Redding
 
 v. Finley, 4 Jones’ Eq. 216. It will be proper for us, also, to-bear in mind what we said in
 
 Cromartie
 
 v.
 
 Robinson,
 
 above cited. In that case, which involved the-construction of the will of the late Gen. McKay, we used the following language: We think proper also to say, in patting a construction on the will now before us, we have a single eye to the intention of the testator, without reference to the notion that courts should favor charities and lean in
 
 fmorern Ub&rtatis;
 
 for however humane we may suppose the feeling that prompts, it is not established that public policy favors the emancipation of slaves. And, although the principles of the common law look with favor upon the transition of a bondsman or villien to the state and condition of a
 
 free white
 
 man, yet very different considerations may be involved, where the question is between the condition of a slave and that of a
 
 free negro.”
 

 That the true principle of our law, in relation to the emancipation of slaves, is, that it
 
 permits,
 
 but does not
 
 favor
 
 it, may be seen by any one who will examine the numerous cases on the subject, which have come before our courts for adjudication, commencing with
 
 Haywood
 
 v.
 
 Craven,
 
 2 N. C. Law Repos., 557, and coming down to the recent case of
 
 Lea
 
 v. Brown, 3 Jones’ Eq. 141. In every will or deed where the court lias been able to detect a trust, open or secret, for a state of qualified slavery, in favor of slaves, it has been held to be against the policy of our law and void. “ The policy which forbids emancipation, unless the -freed negroes are sent out of the State, and the policy which forbids
 
 quasi emanei-
 
 
 *368
 

 jpaMon,
 
 by which particular negroes are to be allowed privileges, and are not to 'be required to work like other negroes, but to some extent are to have a discretion either to work or not to work as they may feel inclined, is fully settled by the numerous cases which have been before our court, and is strongly enforced by the Legislature see
 
 Lea
 
 v. Brown, above referred to. The grounds upon which this policy is based are manifest. It has a regard, not only to the favored slaves themselves, (being thereby rendered idle and worthless,) but also to other slaves who are thereby induced to become discontented with their condition, disobedient to their masters, and unfit for the social state, which is essential to the well being, the happiness and even the very existence of both master and slave. We cannot help seeing and feeling that the provisions for emancipation^in the will now before ns, have a necessary tendency to produce similar results. It is true, that the slaves are ultimately to be carried out of the State, but that is not to be done immediately, nor, as to all the slaves, at any one fixed time, as, for instance, at the death of a tenant for life ; but it is to be done at constantly recurring periods for perhaps a century to come. The very fact, that the same person who is to have the services of the slaves, until they arrive at the age when they may choose their freedom, is to carry out the trust for emancipation, will have a strong tendency to induce him to relax the reins of a necessaiy discipline, with the hope of influencing their choice of bondage for the benefit of his children. This will be an evil as long as he may live, operating injuriously, not only to the favored slaves themselves, but, by way of bad example to his other. slaves and to those of his neighbors. In our opinion, the policy of allowing the prospective emancipation of slaves, is carried far enough already, and while we do not feel at liberty, or even inclined, to disturb what has been settled by the adjudications of our courts, we do not feel disposed to go further, and support a scheme of emancipation which is likely to be attended with such bad results as the present.
 

 This view of the case renders it unnecessary that we should
 
 *369
 
 consider particularly, the other objections to the bequest for emancipation. One or two considerations, with respect to the difficulties in the way of its*'practical execution, will readily suggest themselves to those who pay even a slight attention to the provisions of the will. Besides the trouble and inconvenience of applying to the county court of Surry, every time one of the favored slaves shall attain to the age of twenty-five years, there will be an insuperable difficulty, in every instance of a female, to prevent her making a choice of freedom. In niue cases out of ten, a female of that age will have one or more very young children, which, if she elected emancipation, she -would have to leave, because the executor, or person charged with the trust would be compelled to send her to Africa within ninetj days. In most cases, too, he! hire for one year, which is the fund provided bjgtte testator, in a codicil to his will, for the expense of transpe^ration, would be insufficient for that purpose. We need not, however, pursue the subject, because, as we have already said, our opinion is, that the whole trust, for emancipation, upon the scheme declared in the will, is against the policy of the law, aud therefore void. It follows, that the executor must hold these slaves upon the alternative trust, indicated by the testator. A decree may be drawn upon the principles announced in this opinion.
 

 Per Curiam, Decree accordingly.