MOUNTAIN PARK INSTITUTE, Inc., and E. H. KOCHTITSKY et al., Trustees of MOUNTAIN PARK INSTITUTE, Inc., v. JAMES W. LOVILL and A. V. WEST, Executors of R. L. HAYMORE, Deceased.

(Filed 30 April, 1930.)

1. **Wills E i—Trustees of estate created by will may bring action to enforce the trust and for construction of will.**

Under a will creating a trust, the trustees under the equitable jurisdiction of the court may maintain a suit against the executors to ascertain their status and to enforce the trust, and incidentally for a construction of the will, and a demurrer upon the ground that only the executors may call upon the court to construe the will will not be sustained.

2. **Appeal and Error A e—Where formal demurrer has not been filled no appeal will lie from order overruling demurrer ore tenus.**

While an appeal will lie from an order sustaining or overruling a formal demurrer which goes to the whole cause of action or the whole defense, if the defendant after filing answer to the complaint demurs *ore tenus* for the assigned reason that the court has no jurisdiction or that the complaint fails to state a cause of action, C. S., 518, the demurrer is treated as a motion in the cause, from the denial of which there is no right of appeal.

3. **Wills E h—In this case held: condition of trust estate was condition subsequent, and trustees were entitled to trust fund.**

Where the executors of a will are directed to provide moneys for an express trust, to be paid over to certain trustees to be used for the maintenance of an educational institution, and the will states that it was the testator's desire that this should be done as soon after his death as possible, with further provision .that upon the failure of the institution to carry out its designated purpose, at the end of ten years the trust should terminate and the funds distributed according to the canons of descent, otherwise the trust fund to be made permanent: *Held,* the duties of the executors to pay over the funds as directed is not upon a condition precedent, and the trustees were entitled to the fund before the expiration of the ten-year period, and should the trust terminate, the trustees are bound under the law to make the distribution under the canons of descent.

4. **Same—In this case held: whether trust fund could be made immediately available without sacrificing property was question for court.**

Where the executors of a will are required by its terms to provide a trust fund to be held by specified trustees for a designated purpose, the fund to be raised as soon as possible, without sacrificing the estate, .and it appears on the executors' appeal to the Supreme Court that the question . has not been decided in the Superior Court as to whether the fund could have thus been made available, a question of fact, as distinguished from an issue of fact, is presented, which will be inquired into by the lower court upon defendant's motion in the present cause.

MOUNTAIN PARK INSTITUTE *v.* LOVILL.

**5. Wills E a—General rules for construction of wills.**

> The law favors the early vesting of estates, and the first taker is ordinarily to be regarded as the primary object of the testator's bounty, and there is a presumption in favor of conditions subsequent rather than conditions precedent.

APPEAL by defendants from *Sink, Special Judge,* at January Term, 1930, of SURRY. Error.

This is a proceeding in which the plaintiffs ask for a construction of the will of Rufus L. Haymore, deceased, and for a decree directing the defendants as his executors to turn over to the plaintiffs, trustees of Mountain Park Institute, the sum of $100,000 to be held by said trustees in trust for the uses and purposes set forth in the will. The controversy involves particularly the third, fourteenth, and nineteenth items, the material parts of which are as follows:

Item 3. "I bequeath the sum of one hundred thousand dollars to the trustees of Park Mountain Institute, in trust for a period of time and for objects and uses as follows: To invest the same in interest bearing securities or in productive real estate and to apply the income thereof for the payment of teachers employed at Park Mountain Institute, Mount Park, Surry County, and any surplus that may remain after the paying of teachers, to be applied to the general expenses of Park Mountain Institute. I hold a certain deed of trust against the property of the said institute, which deed of trust is to be canceled if a school shall be conducted there, in accordance with the provisions of a charter obtained from the State of North Carolina, for a period of ten years. I direct that the income from this trust fund of one hundred thousand dollars be used to pay teachers and general expenses of Park Mountain Institute, as hereinbefore set forth, until this deed of trust is due; and if at that time the said school shall not have been run for a period of ten years, and the said deed of trust is foreclosed, I direct that this trust be closed, and that the fund of one hundred thousand dollars, together with any accrued income that may not have been expended as hereinbefore provided, and any sum arising from the sale of property under the said deed of trust be distributed among my heirs at law in exactly the same manner as the same would descend if this will had not been made—that is, according to the statutes of North Carolina governing the distribution of estates, both real and personal, in case of intestacy. But if the Institute shall be conducted as provided in its charter and the aforesaid mentioned deed of trust shall not be foreclosed, then I direct that this trust fund be then held by the trustees of Park Mountain Institute, and their successors as a permanent trust fund for the uses and objects hereinbefore enumerated."

Item 14. "After the payment of all my just debts in the manner hereinbefore provided for, provision of the trust fund above mentioned, which trust fund I desire to have established as soon as can reasonably be done after my death in order the Park Mountain Institute may begin to receive the benefits therefrom, and payment of all devises and bequests hereinbefore made, I direct my executors to divide my estate into four equal parts, either by partition or by·sale, or partition as to part and sale of part," etc.

Item 19. "I direct that my executors make provision for the trust fund hereinbefore established, and that they settle all devises and bequests hereinbefore made, except those mentioned in paragraphs 15, 16, 17, and 18 of my will, as soon as they can do so conveniently and without selling my property at a sacrifice. I will state that I am anxious for the income from the trust fund established for Park Mountain Institute be available as soon after my death as possible in order that the school may continue without interruption and the teachers be paid. I have heretofore supported this institution, and I trust that this gift will enable it to enter upon a larger field of usefulness after my death."

Other items aid in ascertaining the testator's intent as·expressed in these three.

The complaint and an amended complaint, the answer and an amended answer were filed, each side making the will a part of its pleading, and the defendants in the amended answer setting up an account showing their dealings with the testator's estate.

When the case came on for hearing the defendants demurred *ore tenus* on the ground that the complaint does not state a cause of action or allege the existence or nonexistence of facts giving the court jurisdiction to proceed to a hearing.

The court overruled the demurrer, and the defendants excepted and gave notice of appeal to the Supreme Court. Thereupon they tendered one issue as to whether they had acted arbitrarily and another as to whether Mountain Park Institute had been conducted up to that time in keeping with its charter. The judge refused to submit the issues to a jury and the defendants excepted. He then entered upon the hearing without objection by any of the parties and after considering the complaint and answers, the will, copies of the original records of accounts, and the admissions of counsel, he found certain facts and gave judgment for the plaintiffs, as appears of record. The defendants excepted and appealed.

*Manly, Hendren & Womble, W. L. Reece and S. P. Graves for plaintiffs.*

*Murray Allen and Folger & Folger for defendants.*

ADAMS, J. The first assignment of error is addressed to the question whether the complaint states a cause of action. The appellants argue that it does not, and that the demurrer *ore tenus* should have been sustained. The proceeding was brought, they say, not by the executors named in the will, but against the executors, the legatees, and the devisees by the plaintiffs who, having no authority or power to administer the testator's estate cannot prosecute a suit to construe the will, or to control the discretion vested in the executors, without at least specifically charging bad faith or arbitrary conduct. This statement is deduced from the proposition that unless an executor voluntarily applies to the court for direction and guidance the court will not generally interpose to control the exercise of his discretion. 25 C. J., 162, sec. 640(e).

It is well settled that an executor upon whom the will casts the performance of a duty may, when he needs instruction, bring a suit in equity to obtain a construction of the will. *Bank v. Alexander,* 188 N. C., 667; *Trust Co. v. Stevenson,* 196 N. C., 29; *Dulin v. Dulin,* 197 N. C., 215. In such case the jurisdiction is incident to that of trusts. Courts of equity do not exercise advisory jurisdiction if no trust has been created, or if the estate is a legal one, or if the question of construction is purely legal. *Tayloe v. Bond,* 45 N. C., 5; *Alsbrook v. Reid,* 89 N. C., 151; *Cozart v. Lyon,* 91 N. C., 282; *Reid v. Alexander,* 170 N. C., 303; *Herring v. Herring,* 180 N. C., 165.

But it does not follow that executors or trustees have the exclusive right to institute suits in which the construction of wills may be involved. Since equity has inherent power as an incident to its jurisdiction of trusts to construe wills to the extent to which trusts are thereby created, beneficiaries under a will, whose interests are founded in a trust relation or whose beneficial right is dependent upon the due performance by an executor of an obligation arising out of a confidence reposed in him by the testator, may bring suit to compel performance of the trust and incidentally to have the will construed. As suggested in *Reid v. Alexander, supra,* the suit would be constituted in a court of equity under the "known and accustomed head" of Equitable Titles, embracing trusts and their administration. 2 Page on Wills, secs. 1401, 1405.

Here the plaintiffs are prosecuting a suit in equity for the enforcement of a trust. They request a construction of the will, not as affording in itself the main relief they seek, but as incident to an equity which they allege entitles them to the beneficial enjoyment of property given them under the will. It is therefore apparent that in overruling the demurrer *ore tenus* the judge made no error.

From this order the defendants had no right of appeal. According to its etymology a demurrer imports that the objecting party will not proceed with the pleading, because no sufficient statement has been

made on the other side, but will await the judgment of the court whether he is bound to answer. Stephen on Pleading, sec. 44. In substance, a demurrer is a formal allegation that the facts as stated in the pleading to which objection is taken, even if admitted, are not sufficient to put the demurring party to the necessity of answering them or proceeding further with the cause. A general demurrer goes to matters of substance while a special demurrer points out particular defects. *Harrington v. McLean,* 62 N. C., 258. It was the settled practice in equity that where a demurrer was put in to the whole bill for causes assigned on the record and these causes were overruled, the defendant was allowed to assign other causes of demurrer *ore tenus,* on the argument. But a demurrer *ore tenus* was not allowed unless there was a demurrer on record. Story's Eq. Pleadings, sec. 464; Beach's Mod. Eq. Practice, sec. 264; *Vanhorn v. Duckworth,* 42 N. C., 261; 21 C. J., 441, sec. 483. "In equity there was what was called a demurrer *ore tenus,* or oral demurrer, which meant that, when the defendant had filed a formal demurrer for certain defects assigned, other causes for demurrer might be assigned orally on the argument; but this would not apply unless a formal demurrer had been filed." McIntosh's N. C. Practice and Procedure, sec. 436.

In our practice all demurrers are special; they must distinctly specify the grounds of objection to the complaint. C. S., 512. The grounds of demurrer are given in section 511. The result is that while an appeal lies from an order sustaining or overruling a formal demurrer which goes to the whole cause of action or the whole defense *(Commissioners v. Magnin,* 78 N. C., 181; *Ramsay v. R. R.,* 91 N. C., 418; *Frisby v. Marshall,* 119 N. C., 570; *Clark v. Peebles,* 122 N. C., 163), if the defendant after filing an answer to the complaint demurs *ore tenus* for the assigned reason that the court had no jurisdiction or that the complaint does not state a cause of action (section 518) the demurrer *ore tenus* is treated as a motion in the cause, from the denial of which there is no right of appeal. "The refusal of motions to dismiss for want of jurisdiction or that the complaint does not state a cause of action, even though they go to the whole action, are not such demurrers as permit an appeal." *Shelby v. R. R.,* 147 N. C., 537. To allow appeals in such cases would admit of infinite delay, abuse and vexation. *Sprague v. Bond,* 111 N. C., 425; *Joyner v. Roberts,* 112 N. C., 111; *Burrell v. Hughes,* 116 N. C., 430. It was suggested in *Joyner's case* that although an appeal may be taken from an order overruling a demurrer there is this protection against abuse, that if the demurrer is frivolous, judgment is at once granted the plaintiff.

Apart from this, the defendants did not insist on an immediate appeal, but forthwith tendered two issues. The first related to the exercise

of the defendants' discretion; the second to the question whether up to the time of the trial the school had been conducted in keeping with the charter. These issues the judge declined to submit to the jury and without objection by any of the parties he considered the pleadings, the will, and the exhibits. We are unable to see that this course was in any way prejudicial to the appellants. As to the second there was no controversy; and as to the first it may be said that substantially all the material facts are shown by the record evidence and the allegations and admissions in the pleadings. Those concerning which there was any controversy raised questions, as distinguished from issues, of fact. Indeed, in the final analysis the controversy was reduced to the single question whether the will, correctly interpreted, created a presently enforceable trust in favor of the plaintiffs. This is the point next to be considered.

The divergence of opinion between the parties is this: The plaintiffs construe the will as disclosing an intent to create in the trustees a vested estate defeasible upon the occurrence of a condition subsequent; the defendants say that a correct interpretation imposes upon them the duty of retaining the trust fund for a period of ten years after the death of the testator, or in any event that they are given a discretion in the matter which in the absence of abuse is not subject to judicial control.

The position of the plaintiffs is in accord with the intent expressed in the will. The testator bequeathed the fund, not to the executors, but to the trustees, in trust for a period of time, at the end of which the legacy is to be held by the trustees as a permanent trust fund, if meantime the institute shall have been conducted as provided in its charter. The trustees are to invest the fund in specific securities and to apply the income to the payment of teachers and the general expenses of the school. The testator directed his executors to make provision for the trust fund as soon as they could conveniently do so without selling his property at a sacrifice. His purpose is expressed in these words: "I will state that I am anxious for the income from the trust fund established for the Park Mountain Institute to be available as soon after my death as possible, in order that the school may continue without interruption and the teachers be paid." That the "period of time" mentioned in the first part of the third item is "a period of ten years" is obvious, as shown by the relation of the two phrases. At the expiration of this time, if the condition be fulfilled, the trust is to be permanent.

The defendants insist that this construction contravenes that part of the third item of the will which provides that if the school shall not have been run for a period of ten years and the deed of trust held by the testator shall be foreclosed, the trust fund, the unexpended income, and any sum arising from the foreclosure of the deed of trust shall be distributed among the testator's heirs at law as in case of intestacy. This

contention rests upon the implication that the executors must make the distribution; but the implication is not true. The statute of distributions designates those among whom the surplus of an estate shall be distributed, and the statute is controlling whether the distribution is to be made by the personal representative or by the trustees of an express trust appointed under the will. In this instance the testator appointed, not only the executors to execute his will, but the trustees to execute an express trust. A distribution of the estate may never be necessary; but if it should be necessary at the expiration of the ten-year period as an incident of the trust, the trustees may be required in the discharge of their trust to distribute the fund under the direction of the court. It is not essential to an administration of the estate that the executors retain the trust fund until the expiration of the ten-year period.

Our construction of the will is fortified by the familiar principle that the law favors the early vesting of estates; that the first taker is ordinarily to be regarded as the primary object of the testator's bounty; and that the presumtion favors conditions subsequent rather than conditions precedent. *Kirkman v. Smith,* 175 N. C., 579; *Taylor v. Taylor,* 174 N. C., 537; 28 R. C. L., 232.

The defense was based chiefly on the alleged right to retain the trust fund for ten years, but the defendants contend that in their discretion they are to determine whether the fund can now be raised without sacrificing the property. Although the testator did not give his executors the unrestrained power to hold the trust fund for ten years, that he did clothe them with a certain discretion in making provision for the fund is not in doubt. It is indicated in the fourteenth and nineteenth paragraphs of the will. But the discretion given them is not unrestricted; it is subject to the supervision of the court and must not be abused or exercised arbitrarily or without due regard to the interests of the beneficiaries. *Keith v. Scales,* 124 N. C., 497; *Trust Co. v. Ogburn,* 181 N. C., 324. The judgment does not specifically determine the question whether the defendants unreasonably or arbitrarily withhold the trust fund from the plaintiffs or whether they withhold it in good faith only because they cannot "make provision for the trust fund" without selling the property at a sacrifice. The trial court may inquire into this matter at the instance of the plaintiffs by a motion in this cause and may determine it as a question of fact without the intervention of a jury and render such judgment as may be necessary to effectuate the testator's purpose in establishing the trust.

Error.