JAMES BARKER *et al. vs.* ANN L. ASHLEY *et al.*

MAY 25, 1937.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker, and Condon, JJ.

BAKER, J. This bill in equity was brought to procure the construction of the will of William Henry Marshall, late of Warwick, deceased. The Superior Court, after taking formal proof, certified the cause to this court under the provisions of general laws, 1923, chapter 339, sec. 35.

From the record it appears that the testator died January 5, 1918, leaving the will in question, which was dated February 8, 1913 and was admitted to probate March 4, 1918. His widow, Ellen Marshall, died in Warwick, intestate, in November 1931. William Henry Marshall at the time of

his death was seized and possessed of certain real estate in the city of Warwick, and this property was not thereafter conveyed, alienated or devised by his widow, to whom it was left under his will. The personal estate of the testator, which was not large, is not involved in this proceeding.

The complainants are husband and wife, James Barker being a nephew and heir at law of Ellen Marshall. The respondents are all the known heirs at law of William Henry Marshall and all the other heirs at law of his wife, together with the beneficiaries under the will of one Mary Ratcliffe, a deceased sister of Ellen Marshall. A guardian *ad litem* was appointed for a minor respondent and to represent contingent interests and those of persons not in being and not ascertainable. The pleadings in the case have been properly closed. The body of the will now before us for consideration is as follows:

> "This is a true statement that I William Henry Marshall will all that I possess at the time of my death both real estate and personal property to my Wife Ellen Marshall to have full control and to take effect the same day of my death without any incumberance or interference in any way to sell or draw any part or full amount of any of my accounts which stands in my name at the time of my death. If there is anything left after expences is paid at the time of both our deaths to be equally divided amongst Brothers and Sisters of both sides if Brothers or Sisters are dead to go to there Children excepting Brother John Barker his share to go to his Son James Barker less one hundred and fifty Dollars.
>
> "Sister Martha Sutcliffe share is to go her Sons and Daughter Fred Sutcliffe and Llewellyn Sutcliffe and Ann Sutcliffe. If any trouble should occur we want the signatures to settle all trouble with charges."

Three questions are raised in the bill of complaint concerning this will, namely: "(1) What interest or estate in the above described real estate was devised to the said Ellen Marshall by the will of William Henry Marshall? (2) In

the event that the Court should determine that said Ellen Marshall was devised an estate in said real estate for the term of her natural life, whether the remainders after said life estate vested at the time of the death of the testator William Henry Marshall or at the time of the death of the life tenant Ellen Marshall? (3) Whether the interest in said real estate devised to James Barker is charged with the payment of the sum of One Hundred Fifty Dollars, and if so, to whom should said sum be paid?"

The will, which is written in ink on letter paper, is inartistically drawn and its meaning is not entirely clear. Our first duty is to ascertain if possible the intent of the testator with reference to the disposition of his property. In the instant case, no evidence was presented to assist us in determining this question of his intent, and we are therefore obliged to turn to the language of the will itself in order to find the testator's purpose. In examining this document, it is necessary and proper to give consideration to the will as a whole and to all the testator's desires as expressed therein.

It seems reasonably plain that the testator's first-expressed intent was to leave all of his estate to his wife, giving her broad and general powers. He also evidently had a further desire which was that, if any of his estate remained after the death of both himself and his wife, it should be divided among certain persons as indicated by him in his will. The principal issue in this proceeding is whether or not this second-mentioned intent can be given effect and made operative.

The complainants and the guardian at litem contend that it was the testator's intent that his wife should take an absolute estate in fee and that such intent is expressed in his will, and therefore that his apparent attempt to make a disposition of his property, if any should remain after the death of his wife, is repugnant to the absolute devise to her and cannot be made effective. On the other hand, the re-

spondents claim that it was the testator's intent, as shown in his will, that his wife have an estate for her life only, and that it was then his purpose that his heirs and those of his wife should receive outright the remainder of the estate upon the death of the life tenant, thus carrying out what the respondents maintain was the testator's entire intent. It has been recognized in this state that a will may be so drawn that its terms do create such a repugnancy as the complainants and the guardian *ad litem* urge exists in the instrument we are considering. Touching this matter, the court, in *Rhode Island Hospital Trust Co.* v. *City of Woonsocket,* 48 R. I. 345, used this language at page 347: "It is a rule of testamentary construction in this State, in accordance with generally accepted principles, that in case a testator has made a gift of an absolute estate in fee in land or an unconditional gift of personalty, a subsequent provision inconsistent with the absolute nature of that gift shall be regarded as a repugnant provision and treated as void in law."

The will before us contains neither words of inheritance nor words expressly referring to a life estate in setting out the devise to the first taker, the wife. It is well settled in this state that it is not necessary for a testator to use words of inheritance in order to vest an absolute estate in fee in the devisee. General laws, 1923, chapter 298, section 14. *Waterman* v. *Greene,* 12 R. I. 483. The language used may show an intent on the part of a testator to give the devisee such absolute control over the property as would amount to an estate in fee. On the other hand, under the statute, a devise without words of limitation shall not be construed to pass the fee simple if a contrary intention shall appear by the will.

Cases generally similar to the instant case have been considered by this court. *Pierce* v. *Simmons,* 16 R. I. 689, was an action at law to recover a deposit made on the purchase price of a parcel of land where the validity of the title was

attacked. The court held that the first taker under the will in question had the power to sell and convey the land. The devise therein involved was "to my wife, Abby Simmons, . . . to her and her only." Following this was a gift over of "whatever of my said estate, . . . that shall or may remain at her death . . . ." In that case the court held in substance that, standing alone, the first clause would pass an estate in fee simple to the testator's widow and that possibly the next clause should be rejected for repugnancy. Giving them both consideration, however, and assuming that both might stand, the court came to the conclusion that although the first clause was to some extent qualified by the second, it was not enough qualified to cut the widow's interest to a simple life estate, but only in such manner as to give her a life estate with full power to dispose of the property during her life.

The case of *Wood for an Opinion,* 28 R. I. 290, which is relied on by the complainants and the guardian *ad litem,* was a petition for the construction of a will. There, in the residuary clause, the testatrix gave the remainder of her estate to her husband, "he to have the full use and benefit thereof unconditionally." In the next sentence, she provided that: "After him, should any remain . . . ", then certain named persons would take. In deciding that the husband took an estate in fee, and that the restrictive clause was void, the court used the following language at page 290: "It seems to us that the testatrix intended to give her husband such absolute control over the estate as is inconsistent with the limitations of any less estate than a fee. The 'use' of the estate might be enjoyed by a life tenant; but the full 'benefit' thereof could not be taken 'unconditionally' without power to sell or to convey by will.

"The words in the second sentence, 'after him, should any remain,' indicate a desire that if Mr. Wood should not dispose in his lifetime of the whole estate the residue left by him should go to the beneficiaries named; but this is not

consistent with the testamentary power which is given to him, as it seems to us by necessary implication. This particular intent of the testatrix must yield to her general intent as expressed in the first sentence."

We are of the opinion that the will in the instant case, while resembling in some respects that in the *Wood* case, *supra,* differs essentially therefrom, and that the decision of the court in that case is not controlling in the case at bar. In the *Wood* case, *supra,* the court, in holding that the first taker had a fee, emphasized the fact that the testatrix had given the full benefit of the estate *"unconditionally"* to her husband. In the will now before us, we find no language relating to the devise to the testator's wife which is as absolute and comprehensive as that employed in the will in the *Wood* case, *supra.* The words "full control" which are used in the will we are considering are ambiguous. They may conceivably refer to an estate in fee, or, on the other hand, they may express the testator's intent that the first taker have full control during her life only, with, very possibly, the power to dispose of the estate during her life, as was suggested by the court in *Pierce* v. *Simmons, supra,* the word "control" having a broader meaning than the word "use."

It becomes necessary, therefore, to examine the remainder of the will in order to discern, if possible, the testator's intent with reference to the estate he wished his wife to take, and also to assist in clearing up the ambiguity mentioned. We find that by using the words "to sell", he has specifically given his wife the power of sale, an unnecessary provision if he intended her to have an absolute estate in fee in the first instance. This expression obviously does not relate to bank accounts, the authority to draw which is expressly given to the wife, but undoubtedly refers to the other personalty and the realty which made up the testator's estate. The words "without any incumberance or interference in any way" are of little assistance in deter-

mining the testator's purposes, as they are so placed in the will as to make it difficult to understand the connection in which they are used.

A consideration of the will in the present case also reveals that the restrictive clause, providing for the disposition of what remains of the estate after the death of both the testator and his wife, sets out very carefully, explicitly and in considerable detail the desire of the testator that his property should pass equally to his relations and to those of his wife. In fact, the use of the word "we" in the last sentence of the will gives some indication that the scheme of disposal of the testator's estate had been arrived at by an understanding between himself and his wife, and that it was in the nature of a family arrangement. This situation further differentiates the case at bar from the *Wood* case, *supra*, because in that case the restrictive clause, which is very brief, shows no such intent to carry out a general plan or scheme as appears in the will before us.

In the instant case, the will plainly sets out the testator's desire regarding the distribution of such portion of his estate as might be left after his wife's death. It is the gift to the first taker which is ambiguously stated and concerning which the scope of the testator's intent is not clear. The following language used in *Cahill* v. *Tanner*, 43 R. I. 403, at 405, would seem to be applicable: "It is well established that the legal effect of the provisions of a will, plainly expressed, must prevail over an implied intention."

Applying the principles we have discussed to the construction of the present will, and giving consideration to the entire instrument and to all parts thereof in order to ascertain the testator's intent relative to the estate he desired his wife to take, we are of the opinion that it was his intent that his wife receive an estate for the term of her life, with the power to dispose of the *corpus* of the estate during her life if she so wished, and that this was the estate she took under his will as drawn. As it appears that she

did not dispose of certain realty comprising part of his estate, the provisions of the clause providing for the devises in remainder become operative as to such real estate after her death. Thus both of the purposes expressed in the testator's will are given effect. As the wife takes only an estate for her life with power, and not a fee, the devises created under the clause providing for the remainders are not repugnant to the estate given the first taker, and hence the rule as to repugnancy is not applicable.

In view of our above answer to the first question, we are asked in the next question whether or not the remainders set up in the testator's will are vested or contingent. It is well settled in this State that a remainder will be construed to be vested whenever possible. *In re Kenyon,* 17 R. I. 149; *Hayden for an Opinion,* 51 R. I. 117. A power of alienation in the first taker, such as appears in the will in the case at bar, does not necessarily prevent the devise in remainder from becoming vested at the testator's death. Such a remainder will be held to be vested, subject to being divested by the possible alienation provided for in the will, rather than to be contingent. The fact that possession of the estate could not be taken till after the death of the first taker does not preclude the remainder from being held to be vested. *Grosvenor* v. *Bowen,* 15 R. I. 549; *Chafee* v. *Maker,* 17 R. I. 739. We perceive no reason why the general rule should not be applied in the instant case. We find, therefore, that the remainders created under the provisions of the will before us vested at the time of the testator's death and were never divested, in so far as the real estate involved is concerned, since the life tenant with power died without exercising such power or attempting to alienate the realty, and that such remainders then came into possession upon the death of the life tenant.

The final question relates to the meaning of the words "less one hundred and fifty Dollars," as applied to the devise to the complainant James Barker. It is not clearly set

out in the will that the testator desired that this sum be a charge against any share of his realty which James Barker might receive under the will. Further, there is no indication to whom such sum should be paid if it be charged against the share of James Barker. There would be, therefore, an intestacy as to such amount, a result not generally favored in will construction. Whether this deduction was because of previous dealings between the testator and James Barker or his father, or whether the testator anticipated that the amount in question would be taken from the personal estate and not realty, is purely a matter of surmise. We are of the opinion that this provision, referring to the one hundred and fifty dollars, is void by reason of its indefiniteness and the impossibility of ascertaining the testator's real intent in connection therewith, and therefore the interest in the real estate devised to James Barker is not charged with the payment of the said one hundred and fifty dollars.

On June 7, 1937, the parties may present a form of decree in accordance with this opinion to be entered in the superior court.

*McGovern & Slattery, James A. Higgins,* for complainants.

*Roger L. McCarthy,* for respondents.

*Edmund J. Kelly,* guardian *ad litem.*