MARY ETHEL JACKSON, LEA JACKSON ROBERTS, YATES C. JACKSON, HATTIE J. KELLY, MARY JACKSON STOVALL, EMILY JACKSON HAWKINS AND JOHNNIE M. CARSON v. CLEO BRYANT LANGLEY AND JOHN BRYANT LANGLEY, A MINOR, BY HIS DULY APPOINTED GUARDIAN AD LITEM, R. E. BRANTLEY.

(Filed 10 October, 1951.)

**1. Wills § 33c—**

The law favors the early vesting of estates, and when a devise contains no limitation over in the event of the death of the devisee or legatee the estate will vest at the time of the death of testator in the absence of an express intention to the contrary.

**2. Same—Where property is devised in trust for named beneficiary, he takes equitable title vesting at time of testator's death.**

The fact that property is devised to a trustee for the benefit of the devisee, with provision that when the devisee attains the age of twenty-five years all the property of the estate or the remainder thereof or any substitution taken therefor in the course of the administration, should vest in him and be turned over to him, his heirs and assigns absolutely, *held* not to prevent the vesting of the estate in the beneficiary at the time of the death of testator, since the equitable estate vests as of that time and the provision for the vesting of the estate at the expiration of the trust being merely the ascertainment of the time the legal title should also vest in the beneficiary discharged of the trust.

**3. Same: Wills § 33d—**

The fact that the trustee is given the right to use the income or the *corpus* of the trust for his own benefit in the event of certain enumerated emergencies does not prevent the vesting of the equitable title in the beneficiary as of the time of testator's death, but merely makes it subject to be divested of such portion thereof as may be required to meet the authorized needs of the trustee, the trustee being in the same position as a life tenant with power to use the *corpus* or any part thereof for his own use.

**4. Same: Descent and Distribution § 9a—Upon death of owner of vested equitable title, the property descends to his heirs under the canons of descent.**

Testatrix left property in trust to her husband for the use of her son, with further provision that the son should take the property free from the trust upon attaining the age of twenty-five years. The son died before his twenty-fifth year and the father died thereafter leaving a child by a subsequent marriage. *Held:* The property vested in testatrix' son as of the date of her death, and upon the death of the son without issue, the

father took the property under the canons of descent, G.S. 29-1 (6), and upon the father's death intestate the property passed to his child by the second marriage under G.S. 29-1 (1) subject to the dower rights of his surviving widow.

DEFENDANTS' appeal from *Crisp, Special Judge,* January-February Term, 1951, of POLK.

This is an action instituted for the purpose of obtaining a declaratory judgment to determine the rights of the respective parties in and to an undivided interest in certain real property devised in the last will and testament of Bessie J. Langley, which will has been duly probated.

The facts are not in dispute, and may be summarily stated as follows:

1. John L. Jackson devised to his daughter, Bessie J. Langley, an undivided two-fifths interest in certain improved real estate in the Town of Tryon, North Carolina, which interest she owned in fee simple at the time of her death.

2. Bessie J. Langley left no issue surviving her except her son, John Alfred Langley, Jr., but was survived by several brothers and sisters.

3. On 3 June, 1938, she executed a will disposing of her estate in the following manner:

"ITEM III. I hereby devise and bequeath all of my property, real and personal, wheresoever situate, to my said Executor above named, to wit: my husband, his heirs and assigns, in trust, however, to hold, manage and conserve the same so as to produce an income and to apply the net income, after paying taxes and other necessary and proper expenses, to the support, maintenance and education of my son, John Alfred Langley, Jr., during his minority and until he reaches the age of 25 years, giving my said Trustee the authority, if it is necessary in providing for the education of our said son, to use the *corpus* or any part of my said estate, with the further right in my said trustee, in case he should need the income for himself for his own support, if on account of illness or disability he cannot support himself, to appropriate to his own use the income during the period of such disability and if necessary for this purpose to invade and use the *corpus* or any part thereof.

"When my said son reaches the age of 25 years all of said property or the remainder thereof, or any substitutes taken therefor in the course of the administration, as hereinafter provided, shall vest in and be turned over to my said son, John Alfred Langley, Jr., his heirs and assigns absolutely.

"My said trustee shall have the right whenever in his opinion it is advisable to sell the property and change the form of the investment to do so, and may convey the property by good title to the purchaser free of limitations hereinabove set out, but he shall reinvest the proceeds in

other realty or in Governmental or Municipal bonds and shall hold such proceeds under the same trust, with the same right of changing the form of the investment as from time to time may be necessary."

4. After the death of Bessie J. Langley, John Alfred Langley, Jr., died intestate on 23 March, 1943, before he reached his 21st birthday, and his father, John Alfred Langley, Sr., died 2 April, 1949, intestate, and left surviving him his widow, Cleo Bryant Langley, and his minor son, John Bryant Langley, who is now about four years of age.

The court below held that under the provisions of the above will, the title to the two-fifths undivided interest of the testatrix in the property in question, did not vest in John Alfred Langley, Jr., upon the death of the testatrix, and never vested in him since he died before attaining the age of 25. Therefore, the court held that the undivided interest of Bessie J. Langley, in and to the store building in the Town of Tryon, is now owned by the brothers and sisters of the testatrix, and entered judgment accordingly.

Defendants appeal, assigning error.

*J. T. Arledge and James B. Dixon for defendants, appellants.*
*M. R. McCown and J. Lee Lavender for plaintiffs, appellees.*

DENNY, J.   The sole question involved in this appeal is whether John Alfred Langley, Jr., took a vested or contingent remainder in his mother's estate under the terms of her will. The court below held, in effect, that his interest in the estate was contingent upon his attaining the age of 25 years, and having died before attaining that age, the estate never vested in him. We do not concur in this construction or interpretation of the will.

The law favors the early vesting of estates and when a will, like the one under consideration, contains no limitation over in the event of the death of the devisee or legatee, in the absence of an express intention to the contrary, the estate will vest at the time of the death of the testator. *Robinson v. Robinson,* 227 N.C. 155, 41 S.E. 2d 282; *Priddy & Co. v. Sanderford,* 221 N.C. 422, 20 S.E. 2d 341; *Coddington v. Stone,* 217 N.C. 714, 9 S.E. 2d 420; *Weill v. Weill,* 212 N.C. 764, 194 S.E. 462; *Satterfield v. Stewart,* 212 N.C. 743, 194 S.E. 459; *Mountain Park Institute v. Lovill,* 198 N.C. 642, 153 S.E. 114; *Taylor v. Taylor,* 174 N.C. 537, 94 S.E. 7; *Dunn v. Hines,* 164 N.C. 113, 80 S.E. 410.

Moreover, the devise of property to a trustee for a designated period, to manage and control the property as to both *corpus* and income, does not prevent it from vesting in the beneficiary. Page on Wills, 3rd Ed., Vol. 3, Section 1261, at page 701; *Plitt v. Peppler,* 167 Md. 252, 173

At. 35; *Hooker v. Bryan,* 140 N.C. 402, 53 S.E. 130; *Coddington v. Stone, supra.*

It is likewise said in 69 C.J., Wills, Section 1674 (6), page 595: "The fact that the legal title and control of the property are given to another in trust does not prevent the beneficiary from having a vested interest, as there may be vested equitable, as well as vested legal, interests. In other words, in so far as concerns the question of whether an interest is vested or contingent, a gift to trustees for the benefit of another is the same as it would be if it had been made, without the intervention of trustees, directly to the ultimate beneficiary." Also in 57 Am. Jur., Wills, Section 1226, page 809, in discussing this question, it is said: "The circumstance that a testamentary benefaction is given through the intervention of a trustee will, of course, preclude the immediate vesting in the beneficiary of the legal title to the subject matter of the gift, although such beneficiary may become vested with an equitable interest in fee upon the death of the testator."

Furthermore, the mere fact that John Alfred Langley, Sr., the trustee, was given the right to use the income from or *corpus* of the trust estate for his own benefit in the event certain enumerated emergencies arose, did not in any way affect or delay the vesting of the estate in John Alfred Langley, Jr., to any greater extent than if the trustee had been given a life estate with the power to use the *corpus,* or any part thereof, for his own use.

The overwhelming weight of authority, including our own decisions, supports the view that in such cases the estate vests in the ultimate beneficiary upon the death of the testator, subject to be divested of such portion thereof as may be required to meet the authorized needs of the life tenant or other designated person. Page on Wills, 3rd Ed., Section 1264, page 705; *Perry v. Rhodes,* 6 N.C. 140; *Brinson v. Wharton,* 43 N.C. 80; *Williams v. Smith,* 57 N.C. 254; *Myers v. Williams,* 58 N.C. 362; *Lehnard v. Specht,* 180 Ill. 208, 54 N.E. 315; *Braley v. Spragins,* 221 Ala. 150, 128 So. 149; *Woodman v. Woodman,* 89 Me. 128, 35 A. 1037; *Barker v. Ashley,* 58 R.I. 243, 192 A. 304; *Buxton v. Noble,* 146 Kan. 671, 73 Pac. 2d 43; *Downs v. Downs,* 243 Wisc. 303, 9 N.W. 2d 822.

In the case of *Myers v. Williams, supra,* certain slaves were bequeathed to the father, as trustee, for the benefit of his children, but with the further provision that the father was not to be accountable to his children for the proceeds from the labor of the slaves until the children became 21 years of age. The Court said: "The terms of the bequest to the children . . . import a present gift, although the slaves are not to be allotted to them and put into their possession until they respectively come of age. In the meantime, the profits were to be applied toward their education, and the provision in favor of the father, that he was not to be accountable

to his children during their minority, cannot have the effect contended for by counsel for the plaintiffs of preventing the legacy from being vested."

In *Fuller v. Fuller,* 58 N.C. 223, the Court quoted with approval from page 157 of Smith's "Original View of Executory Interests," as follows: "When the testator gives the whole of the intermediate income of real estate, or of personal estate, to the person to whom he devises or bequeaths such estate on the attainment of a certain age, but the attainment of that age does not form a part of the original description of the devisee or legatee, the interest is vested in right before that age, even though there is no prior distinct gift—no express gift, except at that age—it being considered that the testator merely intended to keep the devisee or legatee out of the possession or enjoyment until he should have become better qualified to manage, or more likely, to take due care of the property."

The instant case in every essential part is on "all fours" with *Coddington v. Stone, supra,* except for the provision giving John Alfred Langley, Sr., the trustee, a right to use the income or the *corpus* of the estate, or any part thereof, for himself in the event of certain emergencies. And this provision, as we have heretofore pointed out, did not postpone the time of the vesting.

In the case of *Coddington v. Stone, supra, Seawell, J.,* in an able and exhaustive opinion, discussed and considered the question now before us. C. C. Coddington, Sr., devised a very large estate to a trustee for the benefit of his three sons. The trustee was empowered to handle the estate until the testator's youngest son should reach the age of 21 years, at which time the trustee was directed to divide the trust estate into three equal parts and turn over one of such parts to each son, and the testator's will provided that upon turning over the property, "each of my sons shall thereupon become the absolute owner thereof," discharged of the trust. One of the Coddington children died before attaining the age of 21 years, and the Court held the estate vested at the death of the testator, in the three children, and that the deceased child having been vested with a beneficial interest in one-third of the estate, such interest, upon his own death, passed to his surviving brothers under the laws of descent and distribution. *Hooker v. Bryan, supra; Myers v. Williams, supra; Brinson v. Wharton, supra; Perry v. Rhodes, supra; Cropley v. Cooper,* 86 U.S. 167, 22 L. Ed. 109; *Plitt v. Peppler, supra; In re Estate of Aye,* 155 Kan. 272, 124 Pac. 2d 482.

The appellees contend, however, that the provision in the will of the testatrix, to the effect that when her son reached the age of 25 years, all of the property of the estate, or the remainder thereof, or any substitution taken therefor in the course of the administration, should vest in him and be turned over to him and his heirs and assigns absolutely, shows

clearly that the testatrix did not intend for the estate to vest until he attained the age of 25 years. We do not so hold, but construe this provision only as fixing the time when the legal and equitable title should vest in her son, discharged of the trust. *Coddington v. Stone, supra.*

Under the construction contended for by the appellees, if John Alfred Langley, Jr., had died just prior to attaining the age of 25 years and had, in the meantime married and left a wife and child, or children, his wife and child, or children, would take nothing, but the collateral heirs of the testatrix would be entitled to the estate. Such could not, in our opinion, have been the intention of the testatrix. *Cropley v. Cooper, supra; Coddington v. Stone, supra.*

Applying the law as laid down in the decisions and authorities cited herein, we hold that upon the death of John Alfred Langley, Jr., the two-fifths undivided interest in the real property in question, passed to John Alfred Langley, Sr., his father, under our canons of descent, G.S. 29-1, Rule 6. It follows, therefore, that upon the death of John Alfred Langley, Sr., intestate, the property passed to his son, John Bryant Langley under the canons of descent, G.S. 29-1, Rule 1, subject to the dower rights of Cleo Bryant Langley, the widow of John Alfred Langley, Sr.

The judgment of the court below is
Reversed.