WALTER GURNEE DYER *et al., Tr. vs.* HARRIET BLAIR *et al.*

JUNE 9, 1939.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

500

Moss, J. This is a bill in equity brought by Walter Gurnee Dyer and Fulton Trust Company, as two of the three trustees under the will of Thomas Suffern Tailer, late of the city of Newport, deceased, for the construction of that will, with particular reference to certain parcels of real estate in that city, which were owned by him at the time of his decease. The respondent Harriet Blair was his widow and is also one of the trustees under his will. The other respondents are their three children, who are beneficiaries, and these children's seven children, who are possible beneficiaries, under the will.

In the superior court, guardians *ad litem* were appointed for these grandchildren, all of whom are minors; and representatives were appointed for the interests of persons not in being who might have interests under the will. Answers were filed by these representatives and for all respondents; and some evidence was introduced, including the will and proof that it had been duly admitted to probate and de-

scriptions of property in Newport of which the testator died seized. The cause, being then ready for hearing for final decree, was certified to this court for determination, in accordance with general laws of 1923, chapter 339, sec. 35.

The testator died December 25, 1928, leaving the will, dated February 10, 1928, and a codicil thereto, which has no bearing in the case, except that it was provided therein that Walter Gurnee Dyer, one of the complainants, might be appointed by the testator's widow as one of the executors and trustees under the will and this was accordingly done. The parts of the will which are or may be pertinent to the questions of construction that have been submitted to us are preceded only by a direction for payment of funeral expenses and debts and by bequests to the testator's wife and numerous persons and are as follows:

"FIFTH: Upon the death of my beloved wife, HARRIET BROWN TAILER, I give, devise and bequeath to my daughter, BETTY BROWN TAILER, my property situated at Newport, Rhode Island, known as 'Honey Suckle Lodge', and to my son, THOMAS SUFFERN TAILER, Jr., all my land situated in Newport, Rhode Island, known as 'Ocean Links', including the Fishing Club; also my Piping Rock Cottage situated at Locust Valley, Long Island.

"In the event that my daughter BETTY BROWN TAILER or my son THOMAS SUFFERN TAILER, Jr. do not accept any of the foregoing property within a period of six (6) months from the date of the death of my wife HARRIET BROWN TAILER, then and upon the happening of such event, the properties herein not accepted by my said daughter or son shall revert to and form part of my residuary estate, and my Executors may rent, lease or sell the same, and securities of an amount equal to the tax assessed value of such property or properties shall be credited to them.

"SIXTH: It is my request that my beloved wife, HARRIET BROWN TAILER, give to my son, LORILLARD SUFFERN TAILER, the property situated at Newport, Rhode Island and known as 'Midcliff', or

such amount as may be equivalent to the tax assessed valuation thereof.

"SEVENTH: All the rest, residue and remainder of my property, real and personal, wheresoever situated, I give, devise and bequeath to my Trustees hereinafter named, IN TRUST NEVERTHELESS, to hold and dispose of as hereinafter provided.

"EIGHTH: I direct my said Trustees to set apart sufficient of the said securities to produce a net income of One thousand Dollars ($1,000) per annum and to pay the same as and when received to my sister, MARY TAILER LIVINGSTON, during her life, and on her death to pay the principal thereof to my beloved wife, HARRIET BROWN TAILER."

Then follow clauses ninth, tenth and eleventh, which are to the same effect as clause eighth, except that the life annuitants are different and that in the ninth and eleventh the amounts of the annuities are different.

The next six paragraphs, so far as pertinent, are as follows:

"TWELFTH: I direct my said Trustees to set apart sufficient of the said securities to produce a net income of Six thousand Dollars ($6,000) per annum and to use said income toward the payment of the upkeep of 'Ocean Links', Newport, Rhode Island, during the life of my son THOMAS SUFFERN TAILER, Jr., or as long as my said son should so desire, and upon his death, unless previously terminated by him, to pay over the principal thereof to my beloved wife, HARRIET BROWN TAILER.

"THIRTEENTH: Mindful of the fact that I have already given my wife and children substantial gifts during my life, I now direct my said Trustees to set apart all the rest, residue and remainder of the said securities and estate in their hands as a trust fund for the benefit of my beloved wife, HARRIET BROWN TAILER, and to collect the rent, income and profits thereof and pay the same, as and when received, to her during her life.

"FOURTEENTH: On the death of my beloved wife, HARRIET BROWN TAILER, I direct my

Trustees to divide the principal of the trust fund from which she has enjoyed the income during her life, as provided in paragraph THIRTEENTH hereof, into three (3) equal shares, one for each of my children Lorillard Suffern Tailor, Betty Brown Tailer and Thomas Suffern Tailer, Jr., and to pay them the net income therefrom until 1942, when they are to receive one-half of the principal outright, and to pay them the remaining one-half of such principal outright in 1952, in the meantime, however, paying them the net income therefrom.

"Should any child die leaving issue, the said issue shall receive such share hereunder as their parent would have been entitled to if living, in equal shares.

"In the event of the death of any of my children without leaving issue, they may, by Will, leave the income from their respective shares to their wife or husband, as the case may be, the principal, however, to revert to and become part of my residuary estate upon the death of said husband or wife.

"FIFTEENTH: I hereby nominate, constitute and appoint my beloved wife, HARRIET BROWN TAILER, and my partner, JAMES G. WALLACE, Executors of and Trustees under this my Will, and I also empower my wife, HARRIET BROWN TAILER, to appoint one or more additional executors and trustees, provided, however, the successor Executors and Trustees so appointed shall be either one or both of my sons LORILLARD SUFFERN TAILER and THOMAS SUFFERN TAILER, Jr. and/or my daughter BETTY BROWN TAILER and/or PHILIP E. DONLIN, and I direct that no bond or security be required of them or either of them or their successors. My said beloved wife, HARRIET BROWN TAILER, is hereby authorized and empowered to remove all or any of her co-executors and co-trustees with or without cause, upon giving the respective Executor and Trustee to be removed ten days' notice in writing of such removal, and she shall have the right and is hereby empowered to appoint the successors of any and all Executors and Trustees hereunder who shall die or be removed or for any other reason cease to serve. In the event of a dis-

pute arising over any of the terms of my Will or of the administration of my estate, the decision of my beloved wife, HARRIET BROWN TAILER, shall be final and binding upon any and all of the Executors and Trustees who may qualify herein. . . . ."

"SIXTEENTH: I hereby give and grant unto my said Executors and Trustees full power and authority to sell any and all property of which I may die seized or possessed, real and personal, and to that end to make, execute and deliver deeds, conveyances, and other instruments of transfer of the same, but it is my wish, and I so request, that they shall, so far as possible, leave my estate invested in the real estate and securities in which they find it at the time of my death . . . ."

"SEVENTEENTH: I authorize and empower my beloved wife, HARRIET BROWN TAILER, to occupy, during her life, as her personal residence or residences, any and all real estate of which I may die seized or possessed, without the payment of any rent or compensation to my estate, and I direct that none of the real estate of which I die seized or possessed shall be sold by my Executors or my Trustees without the written consent of my said wife, and that she shall have the right to fix the terms of the sale of any and all of such real estate, and my other Executors and Trustees are hereby directed to sell and dispose of any and all real estate of which I may die seized or possessed as and when and upon such terms as my said wife may fix."

The trust provided for in clause twelfth was terminated by Thomas Suffern Tailer, Jr., on March 31, 1934. The testator's daughter, Betty Brown Tailer, mentioned in clause fifth of the will, afterwards married the complainant Walter Gurnee Dyer; and her name, as one of the respondents, is Betty Tailer Dyer. The testator died seized of the properties in Rhode Island described in clause fifth of his will and there has been no conveyance or other change in the title of any of them. We are not concerned with the other property, located elsewhere, which is described in that clause.

The construction of this will involves the decision of some important questions which are by no means easy to decide. As to some of them the intent of the testator is not very clear, and there are expressions of his intent which are not wholly reconcilable with each other. By comparing and considering all pertinent parts of the will, read in the light of the pertinent facts and circumstances in evidence, we have sought to reconcile, as far as possible, opposing expressions of his intent. Where such reconciliation is not possible, we have sought to give effect to that intent which in our judgment appears from the whole will to be the dominant intent, while effectuating the apparently opposing minor intent so far as not clearly inconsistent with the dominant intent.

Of the questions to which answers are sought in this cause, the first two are as follows: 1. "In whom is the title to the respective parcels of real estate known as 'Honey Suckle Lodge' and 'Ocean Links' respectively vested during the life of Harriet Blair?" and 2. "Is the legal title to the same vested in said Harriet Blair for life, or is the legal title to the same, during her life, vested in the trustees under said will?"

By clause fifth of the will, these parcels of real estate are devised, upon the death of his wife, to his daughter and his son Thomas Suffern Tailer, Jr., respectively, with a different disposition, which we need not now discuss, of such of these parcels as are not accepted by the respective devisees within a period of six months from the death of the wife. This clause left, undisposed of, the title to these properties during the wife's life. Clauses second, third, and fourth contain only bequests; clause sixth is only a request to the wife, which does not concern any of these parcels; and then, by clause seventh, all the rest, residue and remainder of the testator's property, real and personal, wherever situated, is given, devised and bequeathed to the trustees under the will, in trust to hold and dispose thereof as afterwards directed.

As the titles, during the wife's life, of these parcels of real property in question, were not disposed of previously to clause seventh, we see no sufficient reason why they should not pass under that clause to the testator's trustees, as parts of the rest, residue and remainder of his estate. In *Quinn* v. *McDowell,* 47 R. I. 314 at 316, 132 A. 888 at 889, this court said: "The words 'rest and residue', in the absence of language showing a contrary intention, mean the estate remaining after satisfying all previous gifts." See also *City Bank Farmers Trust Co.* v. *Taylor,* 53 R. I. 126, at 133, 163 A. 734, at 737. We find nothing in the will now before us which, in our judgment, shows any contrary intention.

Moreover, a conclusion that legal estates in these properties for the wife's life passed under clause seventh is, in our judgment, supported by certain language in the second paragraph of clause fifth. By this it is provided that any of the properties, therein devised, not accepted by the devisees within six months after the death of the testator's wife "shall revert to and form part of my residuary estate, and my Executors may rent, lease or sell the same . . . ."

The testator in that quoted language uses the word "Executors", but he refers to his "residuary estate", and that is only given, devised and bequeathed by clause seventh and to his *trustees* alone. In clause fifteenth he names the same persons as both executors and trustees and they are treated together in the next two clauses. Moreover, the words "shall revert to" are practically equivalent to "shall return to"; and from their use by the testator it is almost a necessary inference that he intended that these properties described in clause fifth should, while his wife survived him, be parts of his residuary estate held in trust by his trustees for her benefit.

It is true that there is a certain inconsistency between that inference and the language of the very first part of clause fourteenth, in which the testator directs his trustees, on the death of his wife, "to divide the principal of the trust

fund from which she has enjoyed the income during her life, as provided in paragraph Thirteenth hereof, into three (3) equal shares, one for each of my children . . . ", and did not exclude, from the trust fund to be thus divided, the properties dealt with in clause fifth. But they may have been overlooked in drafting clause fourteenth, and it is our opinion that a great deal of weight should not be given to the testator's failure thus to exclude them.

Moreover, the effect of the language last above quoted from clause fifth seems to us to be quite strongly supported by the language at the beginning of clause seventeenth, authorizing the testator's wife to occupy, during her life, as her personal residence or residences, any and all real estate *of which he might die seized or possessed,* without the payment of any rent or compensation to his estate. It seems to us fairly clear that this provision applied, *inter alia,* to the property described in clause fifth as "Honey Suckle Lodge"; and we can see no adequate reason why the testator should thus expressly give his wife the right to occupy such property, without payment of rent or other compensation *to his estate,* if he intended that she should have a legal life estate in that property. It seems to us that from the language used the natural implication is that he intended that during her survivorship all his properties suitable for residence purposes should be a part of the trust estate.

This reasoning as to his properties suitable for residence purposes has probably no *direct* application to the property referred to in clause fifth as "Ocean Links". But it does have a direct application to the property therein described as "Honey Suckle Lodge"; and it seems to us very improbable that he intended to give his wife a legal life estate in the former of these properties, if he did not in the latter of them.

In contending that Harriet Blair has a legal life estate in these properties by necessary implication from the manifest intention of the testator, her counsel has cited *Thomas* v.

*Rhode Island Hospital Trust Co.,* 50 R. I. 369, 147 A. 884, and *Smith* v. *Bradford,* 51 R. I. 289, 154 A. 272. He also quoted from the opinion of this court in the earlier of these two cases, at page 374, as follows: "The authorities are almost unanimous to the effect that an estate by implication is never permitted, except from necessity, which must be apparent on the face of the will, and for the purpose of effectuating the manifest intention of the testator." The opinion in the later of the two cases is to the same effect.

The same counsel also quoted, from the earlier of these opinions, a statement in 1 Jarman on Wills (6th Am. ed.) 532, as to the implication, of a life estate in A, that may arise from a testator's devise to his heir of a remainder in certain property after the death of A. The opinions of this court in the above cases and the discussion by Mr. Jarman of the subject of such implication have been considered by us in the light of the language of the will now before us and especially of the provisions that to our minds show an intent to give, for the life of the testator's wife, a *legal* estate to his trustees and an *equitable* estate to her, in the properties described in clause fifth. As a result of such consideration we have come to the conclusion that a devise to her of a legal life estate in these properties should not be implied from the devises, in that clause, to two of his three children, of legal remainders in those properties after the death of his wife.

Therefore, after considering all facts that in our judgment are relevant to the first two questions, we have reached the conclusion, not without some difficulties, that during the lifetime of Harriet Blair the legal titles to the parcels of real estate respectively known as "Honey Suckle Lodge" and "Ocean Links" are not vested in her, but are vested in the trustees under the will, by clause seventh thereof.

The eighth question as to which an answer is sought by the complainants is as follows: "Is the right of said devisees in remainder in the respective lands devised to them under

clause fifth to accept said devises only personal or does said right, upon their deaths, respectively pass to their respective heirs or devisees?"

In the first paragraph of that clause the testator, upon the death of his wife, devises to his daughter the "Honey Suckle Lodge" property and to his son Thomas his "Ocean Links" property. This would give each of them an estate in remainder in certain property, upon the death of the testator's wife; and that estate would be in fee simple under G. L. 1923, chap. 298, sec. 14, by which it is provided as follows: "Whenever any real estate shall be devised without words of limitation, such devise shall be construed to pass the whole estate or interest which the testator had power to dispose of by will in such real estate, unless a contrary intention shall appear by the will."

In the second paragraph of the same clause of the will it is provided that in the event that the daughter or the son named do not accept any of these properties "within a period of six (6) months from the date of the death" of the testator's wife, "then and upon the happening of such event, the properties herein not accepted by my said daughter or son shall revert to and form part of my residuary estate, and my Executors may rent, lease or sell the same, and securities of an amount equal to the tax assessed value of such property or properties shall be credited to them."

In the first place, we are of the opinion that the statutory provision above quoted does not require that the language of this clause be so construed as to enable the heir or devisee or other successor in title of the testator's son or daughter, as to his or her estate under this clause, to exercise the option, clearly given to him and to her, to accept in specie the whole or any separable part of the property devised to him or to her.

After considering the language of this clause and the nature of the properties involved, which are of special interest to these devisees personally, and noticing particularly

the absence from the clause of any reference to any person or persons other than the testator's wife and the two devisees named therein, we are of the opinion that the rights to accept the devises were intended by the testator to be *personal* to these devisees and not to pass, upon their respective deaths, to their respective heirs, devisees or assigns. We observe that no other intent is contended for by any of the counsel in the case; and our answer to this eighth question is that the devisees' rights to accept the respective lands thus devised to them are *personal* and do not pass to their respective heirs, devisees or assigns.

It is also our opinion that under the language of the same paragraph, particularly the language first above quoted therefrom, the devisees' rights to accept the properties devised to them respectively can only be exercised during the six months period specified and *not before,* by anticipation. In this respect we do not agree with the contentions of some of the counsel in the case.

The substance of the fifth question is what is the interest of Thomas Suffern Tailer, Jr., and of Betty Tailer Dyer in the properties devised to them respectively by clause fifth of the will. It is not in dispute that, as above stated, there was devised to each of these devisees an estate in fee simple in remainder, upon the death of the testator's wife, in certain real property; and the only unsettled question is whether such estate in remainder is vested or contingent.

Even as to that question it has not been contended before us by any of the counsel that these are *contingent* remainders. It is well settled in this state that a remainder will be construed to be vested, whenever possible. *Barker* v. *Ashley,* 58 R. I. 243, at 251, 192 A. 304, at 308, and cases cited. In Gray on Rule Against Perpetuities, (3rd ed.) 85, § 108, the matter is discussed thus: "Whether a remainder is vested or contingent depends upon the language employed. If the conditional element is incorporated into the description of, or into the gift to the remainder-man, then the re-

mainder is contingent; but if, after words giving a vested interest, a clause is added divesting it, the remainder is vested."

Applying this rule to clause fifth, we observe that the language of the first paragraph, read alone, clearly devises to each of the devisees a vested remainder in certain real property. We also observe that the second paragraph of the clause adds a provision, by which, on the happening of a certain contingent event, his or her estate in such real property will be defeated and the property will revert to the residuary estate and thus become a part of the main trust estate, and its assessed value will be paid to him or her from that trust estate in securities.

Our answer to the fifth question is, then, that each devisee's interest in the real property devised to him or her is a vested estate in fee in remainder, which is expectant upon the death of their mother and which will be defeated by a certain event, namely, the failure of him or her, as the case may be, to accept such real property within the period of six months after the mother's death. It follows also, in our opinion, that if, during their mother's life, it should become impossible for either devisee, by reason of his or her death, to exercise after the mother's death the right to accept in specie the real property devised to him or to her, as the case might be, then, upon the mother's death, the same disposition should be made of that property and the tax assessed value thereof as if by the will that property had been devised to the trustees as a part of the residue of the testator's estate and the trustees had been directed to pay the tax assessed value of that property to such son or daughter, as the case might be, upon the death of their mother.

The sixth question is as follows: "Can said Thomas Suffern Tailer, Jr., and Betty Tailer Dyer, with said Harriet Blair, convey a good marketable title to said premises, either with or without now accepting the devise made to them?" As we have already found that Harriet Blair has

no legal title to any of the real properties described in clause fifth, and that neither of the devisees under that clause can exercise, before the death of their mother, his or her option to accept any of such property, and that no one else can exercise such option, it follows, in our judgment, that this question must be answered in the negative.

The seventh question is as follows: "Can said remaindermen accept said devise in part only and not accept the remainder, and can they accept the devise in piecemeal, as, if and when said real estate is divided and sold?"

It is obvious from the language of clause fifth that the testator's son or daughter, as the case may be, is not limited to accepting all or none of the real property subject to the exercise of such option by such son or daughter respectively during the period of six months following their mother's death. This clause provides, in substance and effect, that if any of the property therein devised to the son shall not be accepted by him, securities of a value equal to the "tax assessed value" of the property not so accepted shall be credited to him; and it provides likewise as to the daughter. It therefore is our opinion that any unaccepted part of the property must be a part that is separately assessed for tax purposes. Otherwise we find no limitation on how much or how little of the property devised to the son or daughter may be accepted by him or her. In answering the eighth question, we have above stated our opinion that their rights to accept the properties devised to them respectively can only be exercised during the period of six months from their mother's death.

The third question to which an answer is sought by the complainants is as follows: "Have the trustees under said will, with the written consent and approval of said Harriet Blair, at a price fixed by her, the power to sell and convey a good marketable title to said real estate?" This refers to the properties devised by clause fifth.

The answer to this question is by no means clear. If the trustees have such power, and must exercise it at and in accordance with her written direction, she can prevent the son and daughter named by the testator in clause fifth from getting, in specie, any of the properties given to them by that clause. It should require clear and strong language in the will to enable her to do this, though not such clear and strong language as would be required to enable her to cause the sale of these properties, if by so doing she could prevent them from deriving *any* benefit from that clause. But, as we shall show in dealing with the fourth question, the sale of any of these properties by the trustees during the life of Harriet Blair will not prevent her son or daughter from getting, upon her death, the sale price or assessed value of any property thus sold.

In our judgment there is strong and clear language, in clauses sixteenth and seventeenth, giving such a broad power of sale to the trustees and the testator's wife. In the former clause the testator gives and grants to his executors and trustees "full power and authority to sell any and all property of which I may die seized or possessed, real and personal." In the latter clause he directs that none of such real estate shall be sold by his executors or trustees without the written consent of his wife and that she shall have the right to fix the terms of sale and then adds the following: ". . . . and my other Executors and Trustees are hereby directed to sell and dispose of any and all real estate of which I may die seized or possessed as and when and upon such terms as my said wife may fix."

It is difficult for us to see how a power of sale over *any and all* of the real estate of which he died seized could have been much more clearly given to his wife, acting through the trustees, except by adding the words, "including the properties described in clause Fifth of this will", or some similar language. Moreover, one of the most notable features, if not indeed *the* most notable feature, of this will is the extent of

the property and powers which the testator has thereby given to his wife and the confidence which he has therein shown in her judgment and sense of fairness and her love for all their children, and that she would act in accordance with his wishes in dealing with any question or emergency that might arise.

Thus, in clause sixth, he merely *requests* her to give to his son Lorillard Suffern Tailer the property known as "Midcliff" or the amount of its assessed valuation for tax purposes. We find nothing in the record before us to show whether this was the testator's property or hers, but, either way, she is left free to decide whether the son will get the property or its valuation or neither.

In numerous instances he makes her the final beneficiary of trust funds set aside for the payment of life annuities to others. He makes her the sole beneficiary during her life of the main trust estate under his will and authorizes her to occupy, rent free, as her personal residence or residences, any and all of his real estate. He makes her one of his executors and trustees, and gives her considerable authority to appoint co-executors and co-trustees and also a power to remove any of them, *with or without cause.* He even provides that in the event of a dispute over any of the terms of his will or of the administration of his estate, her decision shall be final and binding upon any and all of the executors and trustees.

We do not mean that he intended to authorize her to act arbitrarily, but we mean that the language of the will shows that he intended to vest in her a wide discretion as to various matters and that one of these matters was the sale of any and all real estate of which he should die seized. After considerable hesitation we have come to the conclusion that this intent as to the sale of any of his real estate should be treated as predominant over his intent, expressed in clause fifth, that their daughter and their son Thomas should have the opportunity to enjoy, in specie, certain real properties of his after he and his wife were both dead.

Therefore, we are of the opinion that the testator, by the language which we have above quoted from clauses sixteenth and seventeenth, intended to vest and did vest in the executors and trustees the power, during the life of his wife, *and with her written approval,* to sell and dispose of any of his real estate, including the properties described in clause fifth, "as and when and upon such terms" as she may fix. The third question is therefore answered in the affirmative. In so answering, as to that part of the question which concerns the power to "convey a good marketable title", we are assuming that at the time of his death the testator had a good marketable title to these lands and that nothing outside of the probating of his will has occurred to make such title unmarketable.

The fourth question is as follows: "If either said trustees as aforesaid, with the approval of Harriet Blair, have a right as aforesaid to convey said lands, or if said Betty Tailer Dyer and said Thomas Suffern Tailer, Jr., with said Harriet Blair, have the right to convey said lands, to whom shall the proceeds be paid, and how shall the same be held?"

As we have above held that the legal titles to the real estate in question passed under the will to the trustees for the duration of the life of the testator's wife, the equitable interest being meantime in her, it follows that Betty Tailer Dyer and Thomas Suffern Tailer, Jr., with Harriet Blair, have no right, during Harriet Blair's life, to convey any of these parcels so as to pass any present legal title therein. As we have above held that the trustees, with the written approval of Harriet Blair, have the power under the will to sell and convey these parcels of real estate, this question is reduced to the question to whom shall the proceeds of a sale and conveyance of any of such parcels, if made in the exercise of such power, be paid and how shall such proceeds be held.

From what we have above said, in answering previous questions, it clearly follows, in our opinion, that the pro-

ceeds of such a sale and conveyance should be paid to the trustees and should be held by them, during the life of Harriet Blair, as a part of the residuary trust estate for her life under clauses seventh and thirteenth, in trust to pay the net income thereof to her. During her lifetime, such proceeds should be kept separate or separable from the rest of that trust estate, so that at her death they can be disposed of, as nearly as possible, according to the rights and interests created by clause fifth of the will, as discussed *supra.*

In case of the sale of the whole or any part of the property devised to the testator's daughter, she should, if living at her mother's death, have the right, exercisable by notice to the trustees during the period of six months next after her mother's death, to elect to receive from them the trust funds then representing the proceeds of the sale of the property thus sold. If she, though living at her mother's death, should not thus exercise said right of election, or if she should not then be living, the trustees should, as soon as practicable after her mother's death, pay to her or her executors, administrators or assigns, as the case might be, an amount equal to the tax assessed value of such property thus sold. A like rule should be applied, *mutatis mutandis,* in case of the sale of the whole or any part of the property devised to Thomas Suffern Tailer, Jr.

The ninth question, asked in one of the answers, seems to have been abandoned. The tenth question, one of two which were submitted in the answers of Lorillard Suffern Tailer and of the guardian *ad litem* of the two children of Lorillard Suffern Tailer, is as follows: "What interest, if any, have the remaindermen, or the surviving issue of said remaindermen, under the Fourteenth clause of the will of Thomas Suffern Tailer, in the respective lands devised by the Fifth clause of said will?"

From what we have above held, it seems to us to follow clearly that the "remaindermen", so called, under clause

fourteenth can have, as such, no interest in any of the real property described in clause fifth which shall be accepted by either of the devisees in that clause in accordance therewith; that any of such real property not so accepted will, if not previously sold under the power of sale which we have held to be exercisable by the trustees with the written approval of Harriet Blair, become an indistinguishable part of the trust estate governed by clause fourteenth; and that the "remaindermen", or the surviving issue of the "remaindermen", under clause fourteenth, will have no different interest in such real property from that which they will have in the other property, real or personal, held by the trustees under that clause, namely, the equitable right that all the property so held shall be disposed of and managed and the net income thereof paid out, in accordance with the directions which are given in that clause to the trustees thereunder.

It seems clear to us that the eleventh question, being the other one submitted with the tenth, raises no question not fully disposed of in our answers to other questions and we therefore do not state it.

On June 21, 1939, the parties may submit to us a form of decree, in accordance with this opinion, for entry in the superior court.

CONDON, J., dissenting. I dissent principally on the ground that the trustees have no right to sell the real estate specifically devised under the fifth clause. The language of the sixteenth and the seventeenth clauses does not justify an implication that the testator thereby intended to revoke the express devise of specific real estate made to Thomas Suffern Tailer, Jr. and Betty Brown Tailer by the fifth clause. The expressed intention of the testator must control unless that intention is clearly modified or annulled by some other provision of the will or unless, upon an examination of the whole will, an implication appears so plainly to the

contrary as necessarily to require that the apparent inten-
tion be disregarded. *Matteson* v. *Brown*, 33 R. I. 339.

An examination of the will now before us discloses no
such imperative implication. On the contrary, a study of
the whole will tends to confirm the devise expressly made
to Thomas Suffern Tailer, Jr. For example, in the twelfth
clause the testator has expressly charged his trustees to pro-
vide an annual sum of $6000 out of the income of his trust
estate to be used for the upkeep of "Ocean Links" during
the life of his son Thomas Suffern Tailer, Jr., or as long as
he should so desire. Here is a clear indication that the testa-
tor did not intend to vest in the trustees the power to sell
"Ocean Links" which he had devised to Thomas under the
fifth clause. From this it is also reasonable to assume that
the testator did not intend that any of the real estate which
he had devised by the fifth clause would be affected by the
power of sale given to the trustees in the sixteenth and sev-
enteenth clauses.

The whole will also discloses, in my opinion, a definite
scheme or plan of the testator for the disposition of his estate
which negatives any intention on the part of the testator
to make the fifth clause subject to any later clause in the
will. The first part of the will down to the seventh clause
consists of clearly expressed legacies and devises containing
outright gifts of certain personal and real estate to desig-
nated persons. The seventh clause then provides that all
the rest and residue of his property of every nature be given
to trustees upon certain trusts thereafter clearly set forth
in succeeding clauses. This is the second part or trust sec-
tion of the will, and it is in this section, under the sixteenth
and seventeenth clauses, that we find the power given to the
trustees to sell any and all of the testator's property.

The only reasonable construction to give that language
in the light of the testator's plan and his express devises to
Thomas and Betty under the fifth clause, is to say that it
does not apply to the property previously disposed of by
those devises. Certainly it does not seem reasonable to

imply therefrom a limited power in the trustees to sell the real estate so devised on the condition that they segregate the proceeds of such sale so that the devisees may have an option to accept such proceeds or the tax value of the real estate. Such a gift is not one to be found in the will but only in the construction of the court. And such a construction implies an intention on the part of the testator quite different from the one which he expressed in clear language in the fifth clause. This is contrary to the rule several times laid down by this court, and recently restated by us, that the legal effect of plainly expressed provisions of a will must prevail over an implied intention. *Barker* v. *Ashley*, 58 R. I. 243.

There are other portions of the court's opinion with which I am in disagreement, but no useful purpose would be served by discussing these points of disagreement at length here. The court's construction is now the legal expression of the testator's intention and as such it must prevail.

*Sheffield & Harvey, J. Russell Haire,* for complainants.

*William A. Peckham,* for Thomas Suffern Tailer, Jr., and Betty Tailer Dyer.

*Leo L. Tobak,* for respondent Harriet Blair.

*William MacLeod,* for other respondents.

