Carlson *v.* Ritchie, *Administrator.*

---

No. 24,829.

*In re* the Estate of Phillip Carlson, Deceased; Hollis Carlson, *Appellant,* v. David Ritchie, Administrator, *Appellee.*

SYLLABUS BY THE COURT.

Homestead—*Evidence Insufficient to Show Abandonment of Homestead.* The evidence to show an abandonment of a homestead has been examined, and it is held by a majority of the court that the evidence was not sufficient to show such abandonment.

Appeal from Dickinson district court; Cassius M. Clark, judge. Opinion filed April 5, 1924. Reversed.

*C. W. Burch, B. I. Litowich,* and *LaRue Royce,* all of Salina, for the appellant.

*E. S. Crawford,* of Abilene, for the appellee.

Carlson v. Ritchie, *Administrator*.

The opinion of the court was delivered by

Marshall, J.: Hollis Carlson appeals from an order of the district court directing the administrator of the estate of Phillip Carlson, deceased, to sell, for the purpose of paying the debts of Phillip Carlson, certain real property that had been owned by him in his lifetime and occupied by himself and Hollis Carlson, his wife, as their homestead.

The following facts were either conclusively established by the evidence or were admitted by the parties to this proceeding: That Hollis Carlson and Phillip Carlson were husband and wife; that they occupied the property in controversy as their homestead until the death of Phillip Carlson, which occurred at a hospital in Salina on December 14, 1920; that he died intestate; that Hollis Carlson was his only heir; that the estate of Phillip Carlson was insolvent; that at the time of the death of her husband, previous and subsequent thereto, and at the time of the commencement of this proceeding, Hollis Carlson was in poor health; that before the death of her husband, a surgical operation was performed on her at Solomon; that about five weeks after the death of her husband, another surgical operation was performed on her at a hospital in Salina; that she remained under a doctor's care for a considerable time after that; that in March, 1921, a third surgical operation was performed on her; that she never fully recovered her health; that from the funeral of her husband, she went to the home of a friend in Salina; that when she was not in the hospital, she remained at the home of that friend until in May, 1922, when, under the advice of her physician, she went to California for her health, where she was at the time of the commencement of this proceeding; that she purchased an interest in a music store in Salina and worked there when her health would permit; that she made frequent visits to the property in Solomon; that she left there part of the household goods that were in the house at the death of her husband and took part of them to Salina; that prior to the death of her husband, she had voted in Solomon, had transferred her church membership to a church in that city, and had become a member of the Order of the Eastern Star at that place; that after the death of her husband, her membership in the church and in the Order of the Eastern Star remained in Solomon; that the property was occupied by tenants during most of the

time after the death of Phillip Carlson; and that she did not sleep in the house, nor prepare meals there, although she ate lunches which she took there with her.

There was some conflicting evidence. Hollis Carlson testified that she never abandoned the property as her homestead; that she claimed to occupy it as such, and that it was her homestead. She testified as follows:

"I asked Mr. McCullough if he would be interested in buying the house. I said that it was so full of memories for me at the time that I didn't feel like I wanted to come and live there and I didn't want to sell the house, but that I might be forced by circumstances to because my health was bad and I was going to have to have this other operation and I didn't have the money to meet my expenses at the time and asked him if he would be interested in buying it, and he said at that time he wasn't in a position to handle it, but he would think about it."

The wife of the tenant to whom Hollis Carlson talked testified in part as follows:

"Q. Now, what if anything, did you hear her say relative to her intentions in regard to occupying this place as a home at that time or at any future time? A. She said she didn't expect to occupy it. Q. Just state the language as near as you can remember it? A. My memory isn't very good. . . .

"The court: Did Mrs. Carlson state why she wanted to sell the property? A. She said she didn't care to live there since Phil was gone. She said she couldn't hardly stand to be there since Phil was gone, as near as I can remember. Q. What if anything did she say about the business arrangement in Salina? A. I don't think she said anything about it."

In the judgment of the court appears the following:

"After hearing the evidence and arguments said cause was taken under advisement by the court and thereafter on November 28, 1922, and at the adjourned day of the regular September term of said court, the court rendered its findings and decision finding that the real estate in controversy herein, to-wit: Lots 28 and 30 on Fourth Street in Solomon City, Dickinson County, Kansas, was not occupied by the appellant as a home but had theretofore been abandoned by her as a home and that said real estate was subject to sale for the payment of debts proved against said estate which debts greatly exceeded the personal property of said estate."

Hollis Carlson argues that there was not sufficient evidence to support the finding of the court that she had abandoned the property as her homestead. Was there sufficient evidence to support that finding? The evidence to support it may be summarized as follows: That Hollis Carlson did not live in the property after the death of her husband; that she did not sleep there, nor prepare any meals there; and that she bought an interest in a business in Salina

and worked there, when her health would permit. The fact that Hollis Carlson did not live in the property after the death of her husband and did not sleep there, nor prepare any meals there cannot be separated from the circumstances that compelled her to be away from the property—her health and the necessity of her having hospital and medical treatment. Her purchase of an interest in a business in Salina may have been, and probably was, necessitated by her financial condition. Her statements concerning her living in the property were but the natural statements of a grief-stricken widow. Besides, the evidence of the wife of the tenant was not so inconsistent with the testimony of Hollis Carlson as to be regarded contradictory thereto. Considering this evidence against Hollis Carlson and giving it the fullest possible weight against her, the majority of the court is of the opinion that it cannot be said that it showed an abandonment of the homestead.

The judgment is reversed, and judgment is rendered in favor of Hollis Carlson, decreeing that the property is the homestead of Hollis Carlson and is not subject to the payment of debts of Phillip Carlson.

HARVEY, J., dissenting.
BURCH, J., not sitting.