No. 35,461

In the Matter of the Trust Estate Set up in the Will of Melville C. Aye for the Benefit of James Aye Barker During His Life. (DALE AYE SMILEY, Trustee, *Appellant*, v. A. M. JOHNSTON, Administrator of the Estate of James Aye Barker, Deceased, *Appellee*.)

(124 P. 2d 482)

Opinion filed April 11, 1942.

*John H. Hunt,* of Topeka, argued the cause, and *J. L. Hunt, Lester M. Goodell, Margaret McGurnaghan* and *George M. Brewster,* all of Topeka, were on the briefs for the appellant.

*Hal E. Harlan,* of Manhattan, argued the cause, and *A. M. Johnston,* of Manhattan, was on the briefs for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: This is an appeal from a judgment of the district court affirming a judgment of the probate court on a final accounting of a trustee which directed her to deliver a certain trust fund to the administrator of the estate of the deceased *cestui que trust.*

The facts which gave rise to the legal controversy, although undisputed, will require to be stated at some length. The late Melville C. Aye died testate in Manhattan, Kan., in 1928. In 1913 and prior thereto and for sometime thereafter he had been a resident citizen of Ohio. He had a wife, a daughter named Dale Aye Smiley, and an infant grandson named James Aye Barker, son of his daughter Gertrude, Mrs. Harry D. Barker, who had died a short time previously.

Melville C. Aye was a man of means; among his possessions were nearly four thousand acres of land in the counties of Riley, Geary, and Wabaunsee, in Kansas. In April, 1913, when his grandson James Aye Barker was less than five months old, Melville C. Aye made his will, some of the terms of which will require critical attention, but first it will serve our convenience to summarize all its terms thus:

*First.* The testator gave all his personal property to his daughter Dale Aye Smiley, likewise all his real property except as otherwise specifically devised, but charged her with the payments of all his debts, costs of administering his estate and the expense of a suitable monument for his grave.

*Second.* Subject to other provisions of the will and particularly of item four, the testator devised a life estate in some 1,900 acres of land in Riley and Geary counties to his grandson, James Aye Barker, and devised the remainder estate therein and its accumulations to the heirs of the body of James in fee simple, with the pro-

viso that if he died without such heirs, then all of said real estate was to devolve on Dale Aye Smiley, if living, and if not then living to the heirs of her body in fee simple.

*Third.* Subject to the provisions of item five, the testator devised to Dale Aye Smiley a life estate in some 1,820 acres of land in Wabaunsee and Geary counties, and devised the remainder estate therein to the heirs of her body, in fee simple, but provided that if she died without such heirs, then all of said real estate was to devolve on James Aye Barker, if living, but if not then living, to the heirs of his body living or born thereafter, in fee simple.

*Fourth.* The testator appointed Dale Aye Smiley as trustee to take charge of all the lands described in item two of the will and to care for, operate, farm, and manage them until James Aye Barker reached his majority. Out of the gross income of the lands devised to the grandson, Dale Aye Smiley was to retain five percent of the gross annual income as her compensation. (A charge of one-half the net income of the lands devised in item two to James Aye Barker, and a similar charge of one-half the net income of the lands devised in item three to Dale Aye Smiley were made for the benefit of the testator's wife, mother of Dale Aye Smiley and grandmother of James Aye Barker, but as she died before the testator that feature of the will may be ignored.)

The fourth item of the will also provided that the net income of the lands devised to the grandson should be applied, as far as necessary in the judgment of Dale Aye Smiley, to the support and education of James Aye Barker until he attained the age of twenty-one years; and any excess of such income not so required for the grandson's maintenance, support and education should be carefully invested and reinvested by Dale Aye Smiley, according to her best judgment, in real-estate mortgage loans, or in farm lands to which she should take title as trustee for James Aye Barker, until he arrived at the age of thirty years, at which time the trust should be terminated and any lands so purchased by Dale Smiley, together with the fund itself, should be conveyed to James Aye Barker, his heirs and assigns in fee simple absolute. Upon James's arrival at the age of thirty, Dale Aye Smiley "shall pay and turn over to him any and all sums and securities out of said trust funds remaining in her hands." From the time James Aye Barker would arrive at twenty-one years until he became thirty years of age, Dale Aye Smiley was to continue as trustee of all funds and accumulations

from the lands devised to James, whether personal or real estate, or to which she might have title when he arrives at the age of twenty-one years. She was to continue to act as trustee thereof as theretofore, but with this discretion vested in her—that from time to time she could turn over and convey to James "any part or all of either the income or principal or both in her hands as such trustee." This paragraph of the will also authorized Dale Aye Smiley, at her discretion, to pay $50 per month out of the trust funds in her hands to the testator's son-in-law, Harry D. Barker, father of James Aye Barker, if he remained a single man and should become incapacitated before James Aye Barker attained the age of thirty years.

*Fifth.* This item provided that the discretion vested in Dale Aye Smiley in the latter part of item four to turn over and convey to James Aye Barker (after he attained his majority) any part or all of the income or principal or both arising or accumulating from the lands devised by item two, should not be vested in any person who might succeed her as "trustee of the trust in item four created."

*Sixth.* This provision is of no present importance.

*Seventh.* This paragraph made provision for another trustee in the event of the death of Dale Aye Smiley or her refusal to serve.

*Eighth.* In this paragraph the testator named his wife as executrix, but in the event she predeceased the testator, then his son-in-law John J. Smiley should be executor.

James Aye Barker attained his majority on December 27, 1933, and on that date he came into full legal control of the lands devised to him; but as he had not yet completed his education his aunt, Dale Aye Smiley, continued to manage his lands for him about as she had done during his minority. She collected the rents, paid the taxes and delivered to him the full net income of the property.

During the minority of James, between the death of his grandfather in 1928 and the time he became of age in 1933, there accumulated in the hands of Dale Aye Smiley out of the net income of the lands devised to James, not necessary for his support and education, a substantial amount of money, also a quarter section of land purchased with part of that money. The aggregate value of this fund in money and land was about $9,939.97.

James Aye Barker died on February 14, 1939, when he was about twenty-six years of age—some four years before the time when the fund and its accumulations amassed by his aunt as trustee during his minority should be delivered to him under the terms of his grandfather's will.

The question in this lawsuit is what disposition should be made of this fund with its accumulations. The probate and district courts held that it should be delivered by the retiring trustee Dale Aye Smiley to the administrator of James Aye Barker's estate. Dale Aye Smiley, trustee, contended that she personally should be adjudged to be the owner of the fund, and the rejection of that contention and the judgment in favor of the administrator form the basis of this appeal.

In support of appellant's position, our attention is called to the provision of the will which declares that in the event of the death of James Aye Barker without heirs of his body the remainder estate in the 1,900 acres devised to him should devolve on appellant, and the argument is made that the accumulated income of those lands should follow the real estate. A necessary part of that argument is the assumption that the 1,900 acres so devised to James for life was itself trust property, but that assumption is not well founded. The language of the second item of the will making disposition of the 1,900 acres reads:

"Subject to the provisions of the other items of this my will, . . . I give, devise and bequeath to my grandson, James Aye Barker, for and during the period of his natural life, the following described real estate, . . ."

How should a life estate in lands be created if not in such familiar and precise language? In 19 Am. Jur. 518, it is said:

"The ordinary form of life estate created by grant or devise is one in which property is devised or conveyed to a person to hold for the term of his own life."

See, also, 33 Am. Jur. 465; 1 Restatement, Property, §§ 18, 107; 17 R. C. L. 616; 21 C. J. 938.

While it is true that in the fourth paragraph of the will Dale Aye Smiley is designated as trustee and her duties as such are prescribed —during the minority of James Aye Barker she was—

"To take and have charge and control of all the lands and real estate described in item two (2) of this my will, and the same to care for, operate, farm, manage, and to keep up until my said grandson James Aye Barker arrives at the age of twenty-one (21) years. Said Dale Aye Smiley shall, out of the gross income arising from said lands, pay all taxes, assessments, insurance, expenses and ordinary repairs, and shall retain five percent (5%) annually of such gross income as and for her compensation for the care and management thereof."

But no trust estate in the 1900 acres was devised to Dale Aye Smiley. Her actual relation to the property was that of managing

agent, as authorized by her father's will. She was indeed the trustee of the unexpended income of James's lands during his minority and also of the later accumulation of that income, but not technically trustee of the land itself. But whatever her technical status in relation to James's lands during James's minority that status ended on December 27, 1933, when he attained his majority. The trust in the lands, if trust it was—which we cannot concede—terminated on that date, not only in law, but by operative interpretation of the parties. Thence forward whatever Dale Aye Smiley did in respect to managing and handling her nephew's lands was simply as his agent and she fully and regularly accounted to him in that capacity. One gratifying aspect of this case is the thoroughly correct course of conduct uniformly maintained by Dale Aye Smiley in whatever respects she has served under her father's will.

Our attention is directed to a provision in the fourth item of the will where appellant was clothed with discretionary judgment as to the amount of the income of James's lands which should be expended for his support and education during his minority. From that fact it is argued that on the death of the beneficiary his personal representative has no legal right to the unexpended income and its accumulations, and cases and textbooks are cited in support. (1 Scott on Trusts, §§ 128.3, 128.4.) We have examined some of these authorities, but find none of them in point. Thus in *Garland v. Garland*, 87 Va. 758, 13 S. E. 478, 24 A. S. R. 682, cited by appellant, the suit in simplified terms was one to subject certain trust funds to the satisfaction of a decree against the estate of one Burr Garland to whom a brother had made a devise in the following (abridged) terms:

"My favorite brother, B. Garland, raised by me, and long a resident of Mississippi, is, and has for a long time past been, embarrassed in debt by losses of trade in 1837, and liabilities as surety for others. It might be unsafe to devise property to him absolutely. I therefore set apart in trust in the hands of my executor, for the benefit of my said brother, either of my plantations in Hinds county . . . The profits of the estate is set apart for his (B. Garland's) use under his superintendence. . . . At his death all the property in this clause is to pass to Charles Y. Morriss, in trust to the separate use of his wife, Paulina B. Morriss and her children." (p. 760.)

The trial court held that the fund amassed from the profits set apart to the use of Burr Garland by his brother's will became assets of Burr Garland's estate absolutely. But the supreme court of Virginia quite properly held otherwise because of the further testamentary disposition of the fund to follow the death of the beneficiary.

It is from such cases as the one just cited and others of the same general tenor that Professor Scott formulated the statements which appear in his monumental work on Trusts, as quoted in appellant's brief. But in the identical sections from which she quotes, the text also states that—

"The extent of the interest of the beneficiary depends upon the manifestation of intention by the settlor. The beneficiary is not entitled to the entire beneficial interest in the trust property *unless the settlor manifested an intention that he should have it."* (1 Scott on Trusts, § 128.3, p. 670.) (Our italics).

"Where by the terms of the trust it is provided that the trustee shall pay to or apply for a beneficiary only so much of the income and principal or either as may be necessary for the support of the beneficiary, *the extent of the interest of the beneficiary depends upon the manifestation of intention by the settlor."* (1 Scott on Trusts, § 128.4, p. 671.) (Our italics.)

Much more pertinent to the matter of present concern is the following excerpt from section 128.2 of the same learned treatise, which reads:

"Where by the terms of the trust the income of the trust property is payable to a person for a period at the expiration of which the principal is to be paid to him, he is the sole beneficiary of the trust unless there is a contingent gift over to others or a resulting trust to the settlor if the beneficiary should die before the expiration of the period. *In such a case the beneficiary has the whole beneficial interest,* but his enjoyment of the principal is postponed." (1 Scott on Trusts, p. 666.) (Our italics).

One of many citations fortifying the text just quoted is *Estate of Yates,* 170 Cal. 254, 149 Pac. 555, where the testator made several bequests, one of which reads:

"4th. I bequeath to Jessie Maud Stephens one thousand dollars, same to be held in trust and the principal and interest to be paid to Bartlett Stephens when he arrives at the age of twenty-five years."

A residuary legatee of the estate appealed from an order of distribution. The supreme court's opinion, in part, reads:

"In the *fourth* the bequest was in terms to a trustee, to hold the principal and accumulate the interest and pay it to the beneficiary when he reached the age of twenty-five years. This legacy contains a similar provision for the retention and accumulation of income. . . . While a limitation of years is fixed by the terms of the trust, the ultimate duration of each trust is manifestly based upon a life in being. In each one of these cases, should the beneficiary die, the trust absolutely determines for lack of a beneficiary. . . .

"The legacies were vested. Notwithstanding the unimportant differences in their phraseology, each and all manifest a clear intent upon the part of the testator to give the sums named to the beneficiaries. The time of payment only was postponed and trusts for accumulations created to cover the time

of the deferred payment. There was no bequest over in the event of death. Under all of the authorities the legacies vested in the legatees an absolute, indefeasible and disposable interest. (Citations, including *Claflin v. Claflin,* 149 Mass. 19; 1 Jarman on Wills, Bigelow's Edition, 794.)" (pp. 255, 256.)

The more recent edition of 2 Jarman on Willis (7th ed.), p. 1331, is to the same effect. It is there said:

"[Where] a testator gave his real and personal estate, subject to certain life interests, to the children of A living at her death, 'to be divided share and share alike when and as they shall respectively attain the age of twenty-four years, and to their respective heirs, executors, administrators and assigns.' It was held, both as to the realty (k), and as to the personalty (1), that all the children (the youngest of whom was four years old) took vested interests at A's death."

It is quite true that the beneficiary of a support provided by a maintenance trust has no claim on the trust itself further than the support it provides in his behalf; and of course when the beneficiary dies his personal representative has no claim on the trust. But the trust created in the accumulations of income derived from James's life estate was much more than a maintenance trust. Those accumulations were erected into a trust, and devised to Dale Aye Smiley as trustee for the benefit of James Aye Barker as *cestui que trust;* but the trust *res* was to vest absolutely in him, completely discharged of the trust, when he should attain the age of thirty years. Moreover, while the will provides that in the event of the death of James without heirs of his body the remainder estate in the 1,900 acres of land should pass to Dale Aye Smiley, no such provision appears respecting the ultimate disposition of the trust estate created from the accumulations of the lands devised to James. That trust fund was to be managed and conserved by Dale Aye Smiley, as trustee, until James should attain the age of thirty years, and then the trustee "upon arrival of him the said James Aye Barker at the age of thirty (30) years, she shall pay and turn over to him any and all sums and securities out of said trust funds remaining in her hands,"—fourth paragraph of the will. That appellant has no such favorable position in respect to the trust fund as she enjoys in respect to the remainder interest in the 1,900 acres clearly appears in the language of the second paragraph of the will where it provides:

"At the death of my said grandson, I give, devise and bequeath subject to the provisions of items four (4) and five (5) of this my will all of the above-described real estate and all accumulations then remaining therefrom to the heirs of his body in fee simple, and if he die without heirs of his body living at

the time of his death, or born thereafter, I then give, devise and bequeath all of said real estate to my daughter, Dale Aye Smiley, if she be then living, in fee simple, and if she be not then living, to the heirs of her body then living, in fee simple."

What becomes of the trust fund and accumulations if James should die without heirs of his body? Item two of the will provides that in that event the 1,900 acres devolves on Dale Aye Smiley, but no such contingent remainder estate in the trust fund and its accumulations is created in her behalf. In 21 C. J. 945 it is said:

"In the absence of any limitation or restriction thereof, everything in the nature of income or profits accruing during the continuance of the life estate belongs to the life tenant, and at his death, if not otherwise disposed of by him, passes to his representative; . . ."

In *Hooker v. Bryan*, 140 N. C. 402, a testatrix devised the residue of her real estate to her nephew, upon his becoming of age, and in the meantime loaned the devised property to Ella Bonner, sister of the testatrix, until the nephew should attain the age of twenty-one years. The nephew died after the testator but before he became of age, and an action arose between the heirs of the testatrix which included Ella Bonner, and the heirs and personal representatives of the estate of the nephew. It was held that the latter should prevail. In the opinion it was said:

"It is clear that the testator intended to give immediately the capital to the person in remainder, postponing the enjoyment only till the arrival at a particular age." (Citing cases, including 2 Underhill on Wills, sec. 896.) (p. 405.)

The pertinent headnote, in part, reads:

"Where the nephew died after the death of the testator and before becoming 21, the court correctly adjudged that the heirs at law of said nephew were the owners of the real estate and his personal representatives the owners of the personal property."

Counsel for the litigants debate the point whether James Aye Barker had a vested or contingent interest in the trust fund and its accumulations. Counsel for appellee contend that the fund was vested in interest in James, with postponement of possession and enjoyment until he attained the age of thirty years. There is nothing unusual about such an arrangement. In *Purl v. Purl*, 108 Kan. 673, 675, 197 Pac. 185, it was said:

"A devise may vest, although time of enjoyment may be postponed."

In *Kirkpatrick v. Kirkpatrick*, 112 Kan. 314, 211 Pac. 146, it was said:

"Estates are said to vest in possession, and to vest in interest. An estate vests in possession when there is an accrued, fixed and indefeasible right to present enjoyment. An estate vests in interest when there is a present, accrued, fixed and indefeasible right to enjoyment at a future time." (p. 315.)

See, also, *Stevenson v. Stevenson*, 102 Kan. 80, 169 Pac. 552; *Caple v. Warburton*, 125 Kan. 290, 264 Pac. 47; *Buxton v. Noble*, 146 Kan. 671, 73 P. 2d 43; *Plitt v. Peppler*, 167 Md. 252, 173 Atl. 35, 109 A. L. R. 1, and annotation 5-66; Thompson on Construction of Wills, 597 *et seq.*

Appellant directs attention to the provision of the will which authorized her as trustee, at her discretion, to pay $50 per month to Harry D. Barker, if he remained single and became incapacitated, until James Aye Barker should attain the age of thirty years, "out of said trust funds in her hands to the credit of James Aye Barker," —item four of the will. From this provision it is argued that James had only a contingent interest in the trust fund and its accumulations. That does not follow. While Dale Aye Smiley was trustee she was authorized to exercise discretionary judgment over the disbursement of the trust fund so long as she kept within the testator's general purpose in its creation. Indeed she was authorized, at her discretion, to terminate the trust at any time after James attained his majority by delivering the entire trust fund to him. The will says:

"From the time my said grandson, James Aye Barker, is twenty-one (21) years of age until he is thirty (30) years of age my said daughter Dale Aye Smiley shall continue *as trustee of all the accumulations* from the lands devised to the said James Aye Barker by item two (2) of this my will, whether the same be personal or real estate in her hands, under her control, or to which she has title when he arrives at the age of twenty-one (21) years, and shall continue to act as trustee thereof as theretofore, but *with this discretion vested in her; that she may* from time to time as she deems proper and wise *turn over and convey to him* the said James Aye Barker, *any part or all of either the income or principal or both in her hands as such trustee."* (Our italics.)

There was nothing contingent about the interest of James in the trust fund. It was his absolutely, with enjoyment postponed until he should attain the age of thirty, unless the trustee deemed it wise ·to turn it ·over to him before that time. Moreover, it was only the unexpended portion of the income of James's land during his minority and its accumulations which constituted the trust fund. A less prudent trustee than appellant might have disbursed all the in-

come during his minority, and might have handed the entire fund over to him at any time after he became of age. To such broad discretion did the testator rely on the prudence and wisdom of the trustee.

Counsel for appellant seek to construct an argument favorable to their client on what this and other courts have said in respect to spendthrift trusts. But nowhere in the will we are considering is there any semblance of the creation of a spendthrift trust. When the will was executed James Aye Barker, the testator's grandson, was about four months old. The infant had then recently lost its mother, daughter of the testator. And so the testator made wise but generous provision for the child—a life estate in 1,900 acres of Kansas land, and named the child's own aunt as testamentary managing agent of that land until the child should attain his majority. Knowing that land will not lie down and die, the testator deemed it perfectly safe to have his grandson come into the complete control of the land when he became of age; but he authorized his daughter to create a fund out of the land's net income during the boy's minority and to keep it for him until he attained the age of thirty years unless she deemed it "proper and wise" to turn it over to him prior to that time.

The other arguments advanced against the correctness of the trial court's judgment have been carefully considered, but neither time nor space will permit their further discussion. They do not shake our conclusion that the trial court did not err. Its judgment is therefore affirmed.

Hoch, J., not participating.