No. 36,498

Charles C. Calkin as Administrator With the Will Annexed of the Estate of Nellie Pulliam, Deceased, *Appellant*, v. Clark A. Wallace as Executor and Trustee of the Estate of S. F. Kinert, Deceased, *Appellee*.

(165 P. 2d 224)

Opinion filed January 26, 1946.

*Charles C. Calkin,* of Kingman, was on the briefs for the appellant.

*Clark A. Wallace,* of Kingman, was on the briefs *pro se.*

The opinion of the court was delivered by

WEDELL, J.: This case involves the construction of a will which creates an income trust for three beneficiaries.

Upon the death of the second named beneficiary of the trust her personal representative filed a claim in the probate court against the estate of the testator who created the trust claiming title to certain income on the date of her death. The claim was allowed. The executor and trustee appealed to the district court, where he prevailed. The petitioner has appealed to this court.

It was agreed in the district court that the question of law involved should be determined as though it arose on a motion for judgment on the pleadings. The essential facts are, therefore, admitted.

To the petition for the allowance of the claim was attached a copy of the will and codicil which will be noted presently. The defendant was Clark A. Wallace, executor of the estate of S. F. Kinert, deceased, and trustee of the income trust created by Kinert's will. S. F. Kinert died approximately twenty-six years ago and left surviving his widow, a son and a daughter; one grandchild by the son and three grandchildren by the daughter. The beneficiaries of the trust were his widow, daughter and son. The first of the beneficiaries to die was the widow. She died more than one year prior to the filing of the instant claim. The last distribution of income was made to the daughter and son in the latter part of 1943. During the entire period of the trusteeship reports to the court and distribution to the beneficiaries were made annually and shortly following the close of each calendar year. Nellie Pulliam died testate July 13, 1944. Chas. C. Calkin, administrator of the Nellie Pulliam estate, filed the following claim against the Kinert estate:

"(a) Income accrued in the hands of the executor and trustee from money loaned, cash rent and grain harvested and sold prior to July 13, 1944, a total of $654.39, one-half thereof claimed by Calkin, Administrator of the Nellie Pulliam Estate in the sum of $327.20.

"(b) Income that accrued throughout the year 1944, received by the executor and trustee by the end of the year 1944, prorated on the basis of the time Nellie Pulliam lived as against the period of time said crops were growing and rents accruing and claimed by Calkin, Administrator, in the sum of $93.20."

The petition admitted there were certain taxes and expenses to be deducted from the income and that claimant's estate was required to bear its proportionate share thereof.

The claim was based on the theory the title to the income specified had vested in Nellie Pulliam during her lifetime and therefore constituted an asset of her estate. The claim was resisted on the theory the will disclosed it was the testator's intention that the daughter's portion of the trust income upon her death should pass to the surviving beneficiary of the trust. These contentions present the principal issue in the case and require an examination of pertinent provisions of the will.

By means of a codicil the testator revoked certain paragraphs of a former will and substituted other provisions for the revoked portions. We are, of course, concerned with the will in its final form and with such light, if any, as the changes made in the former will may throw upon the question presented.

In view of the codicil we believe it may aid the reader if the various paragraphs of the original will and codicil are not all set forth in their numerical order. In the sixth paragraph of the will the testator bequeathed to his wife certain designated personal property. In the fifth paragraph he bequeathed to his wife one-half of the proceeds of all his other personal property which by paragraph three he had ordered sold as speedily as possible without material sacrifice. Paragraphs seven, eight and nine provide:

"Seventh: All the rest, residue and remainder of my estate, both real and personal or mixed, of whatsoever kind and nature and wheresoever situated, I hereby will, devise and bequeath unto my Executor, hereinafter named, or unto his lawfully authorized successors in office, in trust nevertheless, for the sole use and benefit of my beloved wife, Anna M. Kinert, my daughter, Nellie Pulliam, and my son, John X. Kinert, for and during their natural lives, and until the death of the last survivor, as hereinafter directed.

"Eighth: For and during the full term of her natural life I hereby will, devise and bequeath unto my beloved wife, Anna M. Kinert, one-half (½) of the net income derived from the trust fund in the preceding section created,

exclusive, however, of the income from the personal property in said trust fund. It being my intention that in as much as my said wife has been given absolutely one-half of all personal property she should not share with my son and daughter in the income derived from the other one-half, but shall be entitled to one-half the net income derived from my said real estate. Upon the death of my said wife her portion of the said trust fund shall be paid to the survivor or survivors of my beneficiaries named in said paragraph numbered 'Seventh'. [Codicil.]

"Ninth: For and during the full term of her natural life I hereby will, devise and bequeath unto my beloved daughter, Nellie Pulliam, one-half (½) of the net income derived from the personal property in said trust fund, and one-fourth (¼) of the net income derived from the real estate in said trust fund. Upon the death of my said daughter her portion of the said trust fund shall be paid to the survivor or survivors of my beneficiaries named in said paragraph numbered 'Seventh'. [Codicil.]"

Paragraphs nine and ten of the codicil are in all respects identical except that the latter contains the name of the testator's son instead of the name of his daughter.

Provisions pertaining to the executor's duties and powers read:

"Eleventh: I hereby direct my Executor, hereinafter named, or his lawfully authorized successor or successors in office, to pay out the amounts directed in the next three preceding sections either annually or semi-annually, as the needs of the parties and the best interests of the estate would require.

"Fourteenth: I hereby will and direct that my Executor, hereinafter named, or his successor or successors in office, shall invest all moneys held under Section Seven of this will in well secured mortgages, real estate being preferred, having constantly in mind the best interest of the estate, the income thereof being deemed to be a part of the income mentioned in said Section Seven."

The third paragraph of the codicil provides:

"Third: I direct that my Executor, or his successor or successors in office shall pay all taxes and lawful charges assessed against my said estate and keep my said real estate and the improvements thereon in good repair and in general to so handle my estate that all my beneficiaries shall derive the greatest benefit therefrom."

Paragraph thirteen which creates the trust reads:

"Thirteenth: At the expiration of the trust estate, created by Section Seven of this will, that is, at the death of the last survivor mentioned in said Section Seven, I hereby will, devise and bequeath unto my beloved grandchildren, children of my daughter, Nellie Pulliam, all the rest, residue and remainder of my estate, both real and personal or mixed, unto them, their heirs and assigns, in fee simple, forever. It being my intention that said grand-children, children of my daughter Nellie Pulliam, shall have all real estate of which I shall die possessed, subject to the above imposed trusts. Should any of said

grand-children precede me in death leaving issue of their body I hereby will, devise and bequeath unto such issue their respective parent's share."

Paragraph four reads:

"Fourth: Upon the death of the last survivor of my beneficiaries, named in the paragraph numbered 'Seventh' of my will, I will and direct that my Executor, hereinafter named, or his successor or successors in office, pay to my granddaughter, Evalyn B. Kinert, or the issue of her body, if she be dead, the sum of One Thousand ($1000.00) Dollars, it being my will and desire that said sum shall not be paid to anyone except the said Evalyn B. Kinert, or the living issue of her body if she be dead, and then only after the death of the last survivor of the three mentioned [in] said paragraph numbered 'Seventh' of said will. [Codicil.]"

Another paragraph of the codicil reads:

"Upon the final settlement of my said estate I will, devise and bequeath unto Flora Kinert, wife of my son John X. Kinert, the sum of One ($1.00) Dollar and no more."

Did the testator intend that upon the death of trust beneficiaries between payment intervals their respective estates should share in the undistributed income of the trust or did he intend that the portions of deceased beneficiaries, not used for their own benefit during their lives, should be paid to the surviving beneficiary or beneficiaries? That is the question presented.

The foundation of this trust is paragraph seven. It creates the trust. It specifies the property to be held in trust. It names the beneficiaries. It designates the precise use and purpose of the trust income and fixes the duration of the trust. For whose benefit was it created? It says ". . . for the *sole* use and benefit" of the beneficiaries named. During what time were the beneficiaries to have the use and benefit thereof? It says ". . . for and during their natural lives." How long was the trust to continue? It says ". . . until the death of the last survivor, as hereinafter directed."

If the testator intended any portion of the income from the trust property should be paid to the estate of a deceased beneficiary he did not say so. If he so intended it is difficult to understand why he provided it should be "for the *sole* use and benefit" of the beneficiaries "for and during their natural lives, and until the death of the last survivor, as hereinafter directed." But let us pursue the question further. The succeeding paragraphs eight, nine and ten of the original will made no provision for the distribution of a deceased beneficiary's portion, whether accrued or unaccrued. But in the same numbered paragraphs of the codicil the testator expressly pro-

vided that upon the death of any beneficiary his or her *"portion* of the said trust fund" should be paid "to the *survivor or survivors of my beneficiaries named.* . . ."

We cannot well ignore the apparent intent disclosed by these provisions of the codicil. It will be observed the testator in no manner curtailed, limited or restricted the "portion of the said trust fund" which was to be paid to the survivor or survivors of the beneficiaries named. The words *"her portion* of the said trust fund" in the absence of any restriction, exception or indication to the contrary, mean the daughter's entire portion, and no less, whether that portion constitutes accrued or unaccrued income. To construe the will otherwise requires us to read into it a meaning contrary to that expressed. That we are not permitted to do. (*Sipes v. Pessemier,* 144 Kan. 300, 58 P. 2d 1085.) It therefore appears the testator intended that any portion of the daughter's trust income not used for her sole benefit during her natural life should be paid to the survivor or survivors of the beneficiaries named and not to her estate. In other words, the testator was not endeavoring to build up the estates of deceased beneficiaries at the expense of the trust fund.

In order to ascertain the testator's intent we need not rely solely on the provisions of the will previously considered. Our construction of those provisions is aided by other portions of the will. They make it crystal clear that this testator gave and withheld precisely according to his likes and dislikes. That, of course, was his privilege so long as such disposition was not contrary to law or public policy.

It appears the testator was of the opinion his estate would not be finally settled until the trust had been fully administered. He appointed his executor to administer the trust. He also made it very clear that after the execution of the trust and upon final settlement of his estate others should have exactly what he directed and nothing else. (See generous provisions made for his *beloved* grandchildren, children of his daughter, Nellie, paragraph thirteen; provision for only $1,000 to his granddaughter, daughter of his son, John, codicil, paragraph four; and last quoted paragraph of codicil which provided for "One [$1.00] Dollar and no more" to his son's wife, Flora.)

His son John is the last surviving beneficiary of the trust. Whatever undistributed trust income may remain upon John's death, according to appellant's theory, will have accrued and vested in

John and will pass to his estate. Whether John dies testate or intestate his widow, Flora, under our law will be entitled to one-half of his property. If John dies intestate his daughter will be entitled to the other half. The undistributed income may be substantial. Yet this testator endeavored to make it certain that John's daughter should obtain only $1,000 out of his estate and that John's wife should receive exactly one dollar and no more. Appellant's construction of the first considered provisions of the will would defeat the last mentioned provisions. The construction urged by appellee, which we believe is sound, upholds and harmonizes the various provisions of the will.

We need not labor the point. It seems to us the denial of the claim, especially in view of the admitted facts in this particular case, is also in harmony with other provisions of the will.

The subject under consideration has been treated extensively by courts and text writers. An annotation in 141 A. L. R., p. 1466, contains two statements which, by reason of breadth and accuracy, merit quotation. They are:

"Although no general rule is, in terms, laid down in the cases, it may be said, considering the cases as a whole, that *in the absence of a contrary expression of intent in the trust instrument,* it will be assumed that the creator of the trust intended that income which at the time of the death of a life beneficiary was available for distribution in the hands of the trustee, but had not actually been paid over to the life beneficiary, was to go to his estate.

"No uniform answer can be given upon the question whether the estate of a life beneficiary is entitled to income of trust property which at the time of his death was available for distribution in the hands of the trustee but had not been paid over to the life beneficiary. The cases agree that the question depends upon the *intention of the creator of the trust as manifested in the trust instrument,* whether the trust is created by a will . . . or by an instrument inter vivos." (Our italics.)

To the same general effect are 2 Scott on Trusts, § 238, p. 1329; 4 Bogert on Trusts and Trustees, § 816, p. 2379; 4 Page on Wills, Lifetime ed., § 1593; 2 Schouler on Wills, Executors and Administrators, 6th ed., § 1296; Thompson on Wills, 2d ed., §§ 428, 429; 33 Am. Jur., Life Estates, Remainders, etc., § 294; Restatement, Trusts, § 235.

It is axiomatic that in the construction of wills the testator's intent is the all-important consideration and that his intention must prevail if not contrary to settled rules of law or in violation of public policy. (*Zabel v. Stewart,* 153 Kan. 272, 109 P. 2d 177;

*Jones v. Petrie,* 156 Kan. 241, 132 P. 2d 396; *Shannep v. Strong,* 160 Kan. 206, 214, 160 P. 2d 683.) An equally well-established principle of construction is that in order to ascertain the testator's actual intent the instrument should be considered as a whole. (*Zabel v. Stewart,* supra; *Selzer v. Selzer,* 146 Kan. 273, 69 P. 2d 708.)

Applying the above principles to the instant will we think appellant's claim was properly denied. In thus concluding we have not overlooked *Cooper v. Cyr,* 141 Kan. 236, 40 P. 2d 375; *In re Estate of Aye,* 155 Kan. 272, 124 P. 2d 482, nor other citations relied upon by appellant.

The judgment is affirmed.