## No. 36,622

In the Matter of the Estate of Nellie R. Thompson, Deceased. (C. W. RICH and KATY RICH, *Appellants*, v. DWIGHT H. THOMPSON as an Individual and as Executor of the Last Will and Testament of Nellie R. Thompson, *Appellee*.)

(171 P. 2d 294)

Opinion filed July 6, 1946.

*R. F. Crick* and *B. V. Hampton,* both of Pratt, were on the briefs for the appellants.

*George Barrett,* of Pratt, was on the briefs for the appellee.

The opinion of the court was delivered by

Hoch, J.: The question here is whether the beneficiaries of a certain devise received an estate in fee or a life estate only. The trial court held that a life estate only was devised, and the devisees appeal.

Nellie R. Thompson, a widow, and a long-time resident of Pratt county, Kansas, executed her last will and testament on November 30, 1943. In this will she left all of her property to her son Dwight H. Thompson. He was her only child and at her death would have been her only heir. On December 2, 1944, she executed a second will, the provisions of which gave rise to the instant controversy. The second will was as follows:

"Pratt, Ks.                                                    Dec 2nd, 1944
"To my dearly beloved brother C. W. Rich, and his wife Katy Rich, I do bequeath to them the 160 acres of land known as the Sloan B. Bell land, *to be returned to my estate in case of death of Wally or Katie or both.*
                                        "Nellie Thompson
"Margaret Stone
"Alice Stephenson"                                        (Italics supplied)

On December 18, 1944—sixteen days after the second will was executed—Mrs. Thompson died, being then seventy-five years of age. C. W. Rich, named in the second instrument, was then sixty-seven or sixty-eight years old, and his wife was a year or two

younger. He was the only brother of Nellie Thompson, and she had no sisters. The first will was admitted to probate on December 29, 1944. After a hearing at which all parties were represented, the will of December 2, 1944, was admitted to probate on March 9, 1945, the court holding that the two instruments together constituted the will of Nellie R. Thompson, and that the later will revoked the former will insofar as it was inconsistent therewith. There is no contention that either will was not properly executed or that the proceedings for probate were not regular.

On June 30, 1945, C. W. Rich and Katy Rich, his wife, filed a petition in the probate court asserting ownership in fee simple of the real estate referred to in the will of December 2, 1944, and asking, in effect, that their title be quieted as against Dwight H. Thompson, sole beneficiary under the instrument of November 30, 1943. The probate court found against the petitioners, holding that the devise of the later will vested in them a life estate only, and that upon the death of the last to survive of the two devisees named, the remainder would vest in fee in Dwight H. Thompson. Appeal was taken by Rich and his wife to the district court. In the district court a stipulation was entered into between the parties, parts of which were as follows:

"That the decedent at the time of her death was the owner of real and personal property of the value of more than one hundred thousand dollars, including the property known as the Sloan Bell, Sloan B. Bell land described in the second instrument. That on the 1st day of December, 1942, Nellie R. Thompson executed an instrument known as a farm lease to C. W. Rich, who is the same person as Wally Rich and Katie Rich, his wife, which is submitted herewith as exhibit one. The contestants object to the introduction of this instrument for the reason that it is immaterial and not competent to determine any issue in this matter, and the court can pass upon whether it is relevant or not, but we are just offering it for what it is worth.

"That the property involved in this action this Sloan B. Bell tract was acquired by the decedent in 1928. That since the date of its acquisition that Wally Rich and Katy Rich have been occupying the premises, rent free, and have made material improvements thereon, and that the taxes at all times have been paid by the decedent and her estate.

"That the records in the probate court and in this court so far as the same are relevant and material shall be considered in evidence in this case. . . .

"That Mrs. Thompson's sole and only heir at law is her son, Dwight H. Thompson.

"That all parties have been residents of Pratt County, Kansas, for more than 50 years. . . .

"That the decedent and her brother and sister-in-law were all on friendly

relations, including the children. They were all on very friendly relations. And C. W. Rich is the only living brother of Mrs. Thompson. That Mrs. Thompson has no sisters and her father and mother are dead."

The farm lease referred to in the stipulation was introduced in evidence, plaintiffs objecting to its admission on the ground that it was immaterial and incompetent and no showing had been made that the plaintiffs had any knowledge concerning it. The lease need not be set out in full. It is sufficient to say that by the instrument Nellie Thompson leased the farm land named in the will of December 2, 1944, here in controversy, to her brother C. W. Rich *"for the term commencing the first day of December and ending on the day of the death of the survivor of the said second parties or the remarriage of Katie Rich"* for the consideration of one dollar and certain covenants, the lessor reserving oil rights. (Italics supplied.)

The district court construed the will, as had the probate court, as vesting a life estate only in C. W. Rich and his wife.

This appeal followed.

This court has long been committed to the proposition that the cardinal rule in construing a will is to determine the intention of the testator from examination of the instrument as a whole. If the intention is clear, it must prevail if not inconsistent with rules of law. Among recent cases in which this rule has been emphasized and in which citation of many former decisions will be found are: *In re Estate of Ellertson,* 157 Kan. 492, 142 P. 2d 724; *In re Estate of Rinker,* 158 Kan. 406, 412, 147 P. 2d 740; *Cramer v. Browne,* 159 Kan. 423, 155 P. 2d 468; *Householter v. Householter,* 160 Kan. 614, 164 P. 2d 101; *Calkin v. Wallace,* 160 Kan. 760, 165 P. 2d 224.

Appellants contend that by the words "to be returned to my estate in case of the death of Wally or Katie or both," the testatrix had in mind the possible death of the two devisees before her death and intended the devise to be contingent upon their surviving her. On the other hand, appellee says that those words show a clear intention to devise a life estate only.

Appellants first call our attention to section 77-201, *Second,* G. S. 1935—which is a part of the statute establishing general rules of statutory construction—which reads:

"Words and phrases shall be construed according to the context and the approved usage of the language; but technical words and phrases, and such

others as may have acquired a peculiar and appropriate meaning in law, shall be construed according to such peculiar and appropriate meaning."

Assuming for the moment that this statute is pertinent to the construction of wills, we do not find it helpful here. We are still left with the question of the meaning and intent of the words used by the testatrix.

Appellants next invoke the provision of the probate code relating to wills that "every devise of real estate shall pass all the estate of the testator therein, unless it clearly appears by the will that he intended a less estate to pass." (G. S. 1945 Supp. 59-614.) Again we are left with the question of whether the testatrix clearly intended to pass an estate less than a fee.

The rule followed in some of our earlier cases that the devise of a fee may not be impaired by a subsequent contradictory provision, has been firmly disapproved in a long line of later decisions which are thoroughly reviewed in *Dyal v. Brunt*, 155 Kan. 141, 123 P. 2d 307. It was there said that—

"The rule of law stated in *McNutt v. McComb*, 61 Kan. 25, 58 Pac. 965, that where a will contains a clause devising property in fee and a later clause containing directions inconsistent with the fee previously devised the later clause is void, has been disapproved as thoroughly as though it had been specificially overruled." (Syl. ¶ 4.)

and that—

"In construing a will the court must put itself as nearly as possible in the situation of the testator when he made the will and from a consideration of that situation, and from the language used in every part of the will, determine as best it can the purposes of the testator and the intentions he endeavored to convey by the language used." (Syl. ¶ 2.)

What, then, was the intention of the testatrix when she "bequeathed" the farm to her brother and his wife and followed the devise with the words *"to be returned to my estate in case of the death* of Wally or Katie or both"? Did the words "in case of" refer—as urged by appellants—to the contingency of the death of the devisees prior to the death of the testatrix, or did they refer to the event of their death certain to happen at some uncertain time in the future? The words are not to be construed as though they stood alone, but must be construed together with other words that were used. Equally important in determining the intent of the testatrix are the words *"to be returned* to my estate." Since a will speaks as of the death of the testator, no title or interest of any sort

would vest at any time in the named beneficiaries if appellants' construction is correct, and therefore there would be nothing "to be returned" from them to the estate of the testatrix. Taking the will as a whole, we think it clear that in using the words "in case of the death of Wally or Katie or both" the testatrix had in mind to provide for disposition of the property upon the death of the last of the two to survive. If a testator says, "I devise Blackacre to A, but in case of his death it is *to go* to B," it may well be construed—as many decisions have done—that he had in mind the death of A before he, himself, should die. In such a case there would be no "return" of title or interest from A because the property would "go" in the first instance to B. That is not the situation here. The testatrix clearly intended that the farm which the named devisees had long been occupying should *first* go to them.

There are, of course, countless cases dealing with construction of provisions in wills similar to those here examined. Extensive reference to other cases would unduly extend this opinion and serve no useful purpose. The words and phrases under scrutiny must in each case be appraised in their context and together with other pertinent provisions of the instrument. We content ourselves here with brief reference to the cases upon which appellants principally rely in support of their view that the testatrix had in mind the death of the devisees prior to her own death.

*Hodges v. Lanyon*, 108 Kan. 407, 195 Pac. 882. The will devised property to certain parties and then provided: "In the event of the death of any of the beneficiaries. . . . I will and bequeath and direct that it be paid to Mirza Temple," etc. Held, that the words "in the event of the death of any of the beneficiaries" meant the death of the devisees before the death of the testator. But in the case before us, the property was "to be *returned*" to the estate of the testatrix, which gives an entirely different aspect to the devise.

*Donohue v. Skinner*, 118 Kan. 215, 234 Pac. 1000. The testator made an absolute devise of all his real estate to his wife, with a subsequent provision in which he attempted to dispose of "one-half of the estate *she may have*" at the time of her death. Held, that the wife got a fee estate since the testator could not dispose of property which his wife might own at her death. It was said that at most the provision was precatory, an expression of a desire to have her give the children a share of her property, upon her death. The case has little bearing here.

*Koelliker v. Denkinger,* 148 Kan. 503, 83 P. 2d 703. The provisions of the will are quite dissimilar from the one before us, and the case is evidently cited because of this statement in the body of the opinion:

"If land be devised to B and his heirs, but if he shall die, then to C and his heirs, 'die' means if B shall die before the testator. If B dies before the testator, C takes; if B survives the testator he takes a fee simple absolute, and C is out." (p. 507.)

Similar quotation is cited by appellants from Restatement, Property, Future Interests Parts 3 and 4, § 263, page 1319. The rule thus stated is clearly sound. But it does not cover this case. In the first place, the words *"if he shall die* then to C and his heirs" very clearly refers to death as a contingency, and the only reasonable construction, in view of the whole provision, is that the testator had in mind the possible death of B prior to his own death. In the second place, the significant words "to be returned" are not present.

*Lewis v. McConchie,* 151 Kan. 778, 100 P. 2d 752. The testatrix devised property to her four children by name and the will then provided:

"Either of them dieing, their share goes to the surviving above-mentioned children, but, in case of any of said children dieing and leaving children of their own, those children are to take their parent's share."

It was held that the words "either of them dieing" meant death of any of the named devisees prior to the death of the testatrix. Such intention we think was perfectly clear. There was no provision for *return* of property in case of death of the devisees, the will plainly providing for disposition of the property under the facts existing at the death of the testatrix.

So much for intent as shown by the terms of the instrument itself. If it be thought that the terms are ambiguous, the conclusion that the testatrix did not have in mind the contingency of the death of the devisees prior to her own death and intended to devise a life estate only is fortified by the facts and circumstances surrounding the execution of the will. While it cannot be said on this record that the will was executed in contemplation of impending death, it does appear from the record that when she executed the will she was seventy-five years old, was in bed, attended by a nurse, and that she died sixteen days thereafter. Her brother and sister-in-law were seven or eight years her junior in age. Margaret

Stone, who had known Mrs. Thompson for about thirty-seven years, and who was present when the will of December 2, 1944, was written and was one of the attesting witnesses, testified:

"I had been down to the kitchen for something, and went back to her room, and the nurse stepped out and Mrs. Thompson and I were there alone. She said, 'Mrs. Stone, get me a pencil and paper. I want to write something.' The nurse came back in. We looked around the room for pencil and paper but didn't find it, and so I went downstairs to tell Alice to find it for me, and to tell Alice to come back upstairs. She had her little table in front of her where she had been eating her dinner, and I didn't know what she was writing at all . . . when she had finished she called me to the bed and asked me to read it."

Some further testimony of the witness with reference to conversation had with the testatrix at the time was stricken out.

In addition to what has been related, we have the circumstance of the lease of this property to the Riches two years prior to the will, to which reference is made in the stipulation, as shown above. The Riches had been occupying the place, rent free, since it was acquired by Mrs. Thompson in 1928. In December, 1942, she executed an instrument by which she leased the property, rent free, to them "for the term commencing the 1st day of December and ending on the day of the death of the survivor of the said second parties or the remarriage of Katie Rich." Appellants objected to the introduction of the instrument but say in their brief that they are not asking that its admission be treated as a trial error calling for a new trial. On the contrary, they suggest that this court "can as well consider the instrument as the trial court and determine if the instrument is competent or material and consider it or reject it accordingly." Assuredly the lease would throw some light upon the testatrix' intention. By devising a life estate, she would merely be putting into her will substantially what had been provided in the lease.

The codicil or will of December 2, 1944, was properly construed by the trial court and the judgment is affirmed.