No. 41,164

HARRY E. JOHNSTON, *Appellee,* v. JACK GIBSON and HERBERT GIBSON, *Appellants.*

(334 P. 2d 848)

110

Opinion filed January 24, 1959.

*John A. Etling* and *W. N. Beezley,* both of Kinsley, and *Morgan Wright,* of Larned, were on the brief for appellants.

*Rae E. Batt,* of Kinsley, was on the brief for appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action in ejectment for possession of real estate. Appeal has been duly perfected to this court from a judgment of the lower court ejecting the defendants.

The only question presented is whether Jack Gibson, one of the defendants below, is entitled to retain possession of the quarter section of real property in question under the terms, provisions and conditions set forth in the last will and testament of Martha Gibson Johnston, deceased.

Upon issues properly joined by the pleadings the parties stipulated all material facts. They stipulated:

"1. That Martha Gibson [Johnston] died, testate, on the 24th day of August,

1939, owning the following described real estate situated in Edwards County, Kansas, to-wit:

"The Southeast Quarter (SE¼) of Section Eighteen (18), Township Twenty-five (25) South, Range Sixteen (16) West of the 6th P. M.

"2. The last will and testament of the said Martha Gibson [Johnston], deceased, was duly admitted to probate in the probate court of Edwards County, Kansas, on the 29th day of September, 1939. That by the terms of said last will and testament, the above described real estate was devised to the plaintiff, Harry E. Johnston, subject to the following proviso, to wit:

" 'provided, however, and subject to the right and privilege of Jack Gibson, brother of David Gibson, deceased, and his wife, Marie Gibson, to have the full use, possession, management, enjoyment and control of said land, rent and tax free, *as long as they, or either of them, continue to occupy the same as their home.*'

"3. Marie Gibson, wife of Jack Gibson, died approximately ten years ago.

"4. Jack Gibson, defendant in this action, is the Jack Gibson mentioned in the above quoted provision of the will of Martha Gibson [Johnston], deceased, and the defendant, Herbert Gibson, is the son of said Jack Gibson, and has in recent years farmed the above described lands.

"5. The said Jack Gibson, together with his wife, resided upon the above premises, continuously, until the death of said Marie Gibson, and thereafter the said Jack Gibson continued to reside thereon. That the said Jack Gibson has at all times claimed the above premises as his home, but that for approximately the last five years, he has not physically occupied the premises except for one day in May, 1955, and that since that time the house on said premises has been uninhabitable.

"6. That Jack Gibson is now about 85 years old; From about 1952 and until early in 1957, because of his physical infirmities, he stayed with different ones of his several children who cared for him but early in 1957, because of his physical condition he has been either hospitalized or living in a convalescent home and is presently in the Nulf Convalescent Home in Larned, Kansas.

"7. Plaintiff has paid the taxes on the above described lands ever since 1939." (Emphasis added.)

The parties further stipulated that the last will and testament of Martha Gibson Johnston, deceased, and the partnership agreement, whereby Herbert Gibson and Jack Gibson farmed the land in question, could be received in evidence and considered by the court.

The Will is quite lengthy and revealed that Martha Gibson Johnston owned considerable property. The paragraph in the Will immediately following the provision for Jack Gibson and his wife devised one half section of real estate in Edwards County to her husband, Harry E. Johnston (plaintiff-appellee), for life with a remainder over to another. The agreement between Jack Gibson and Herbert Gibson specified that the quarter section in question be operated by the parties as partners upon the terms and conditions set forth.

It is appellants' contention that "so long as Jack Gibson claimed the premises as his residence, . . . and has farmed the land, he did not forfeit the estate granted to him by the will of Martha, Gibson Johnston, for the reason that, because of old age, attending physical infirmities, and need for care and medical attention he was not in actual physical occupancy of the premises."

Appellee's position is that the provision in question required Jack Gibson to physically occupy the premises in order to preserve his rights to possession under the Will.

The basis of appellants' argument is the similarity of the words "occupy the same as their [his] home" and the words "occupied as a residence" in Article 15, Section 9, of the Constitution of the State of Kansas, which provides a homestead exemption to the extent of one hundred sixty acres of farming land "occupied as a residence by the family of the owner, together with all the improvements on the same, . . ." Since the language is virtually identical, appellants contend, the testatrix intended and did give to Jack Gibson an estate in the land comparable to a homestead right. It is argued that if the testatrix had a life estate in mind at all, she intended to give Jack Gibson something more than a life estate, not less, since his estate was to be tax free. Appellants then rely upon rules of law applied in cases where homestead rights in real estate were challenged on the ground of abandonment. (*Williams v. Roberts,* 139 Kan. 460, 32 P. 2d 229; *Carlson v. Ritchie, Administrator,* 115 Kan. 722, 224 Pac. 895; *Koehler v. Gray,* 102 Kan. 878, 172 Pac. 25; *Smith v. Landis,* 93 Kan. 453, 144 Pac. 998; and *Shattuck v. Weaver,* 80 Kan. 82, 101 Pac. 649.)

Counsel have cited us to no cases, either from this jurisdiction or elsewhere, involving the precise language presently before the court. It has been said that under such circumstances this court may well assume that counsel, after diligent search, have been unable to find any. (*McCoy v. Fleming,* 153 Kan. 780, 783, 113 P. 2d 1074; *Simeon v. Schroeder,* 170 Kan. 471, 475, 227 P. 2d 153; *Ehrhart v. Spencer,* 175 Kan. 227, 233, 263 P. 2d 246; and *Shobe v. Tobin Construction Co.,* 179 Kan. 43, 48, 292 P. 2d 729.)

While the law is reasonably clear concerning the requirements for abandonment of a homestead, the testatrix did not create a homestead interest by the devise in question. Article 15, Section 9, of the Constitution of the State of Kansas, in using the words "occupied as a residence," made no reference to a situation where title

to real estate was vested in another. To establish a homestead the Constitution requires that the land be "occupied as a residence *by the family of the owner, . . .*" (Emphasis added.) Clearly, under the provisions of the will Jack Gibson and his wife, or either of them, never acquired any ownership in the quarter section of land in question. The fee title was devised to Harry E. Johnston, husband of the testatrix, who was required to pay the taxes. The right of Jack Gibson and his wife, or either of them, "to have the full use, possession, management, enjoyment and control of said land, . . . as long as they, or either of them, continue to occupy the same as their home," was rent-free. Nowhere does the Kansas Constitution indicate that employment of similar language, or even the same language, under the circumstances here disclosed, would create a homestead right in any party who is not the owner, or a member of his family.

Both the appellants and the appellee in their briefs speak of a *construction* of the Will in question. Appellants charge that to require Jack Gibson to physically occupy the premises at all times, as appellee contends, is a *construction* of the devise which is entirely too narrow. Appellee directs our attention to rules of law relative to the *construction of wills* and cites authorities in support thereof.

This situation, presented by counsel in their briefs, gives rise to a problem frequently encountered in cases of this type. While the court's practical application of stated rules of construction to the cases appearing before it has led to consistent results, the language occasionally used by the court is confusing as to where in a given case the *construction* of a will begins.

Where a court, either trial or appellate, is called upon to determine the force and effect to be given the terms of a will, its first duty is to *survey the instrument in its entirety* and ascertain whether its language is so indefinite and uncertain as to require the employment of rules of judicial construction to determine its force and effect. This court has long been committed to the rule that where from an *analysis of the entire instrument* no ambiguity or uncertainty is to be found in its language, the *intention of the testator being clearly and unequivocally expressed,* there is no occasion to employ rules of judicial construction and the will must be enforced in accordance with its terms and provisions. (*In re Estate of Blank,* 182 Kan. 426, 320 P. 2d 775; *In re Estate of Reynolds,* 173 Kan. 102, 244 P. 2d 234; *In re Estate of Hauck,* 170 Kan. 116, 223 P. 2d 707, and authorities cited in the foregoing cases.)

In approaching any problem concerning the construction of a will certain definite rules to be borne in mind are frequently stated by the court, though worded in various forms. These rules are well summarized in the case of *In re Estate of Ellertson,* 157 Kan. 492, 142 P. 2d 724, as follows:

"There is no occasion for employing any rules of judicial construction where the intention is expressed clearly and unequivocally in the will (*National Life Ins. Co. v. Watson,* 141 Kan. 903, 905, 44 P. 2d 269). The will is to be construed so as to give effect to every part thereof, providing an effect can be given to it which appears to be consistent with the purposes of the testator as gathered from the entire will, and to effectuate rather than defeat the intention of the testator. (*Ernst v. Foster,* 58 Kan. 438, 49 Pac. 527; *Selzer v. Selzer,* 146 Kan. 273, 69 P. 2d 708.) Controlling significance is not to be given to one of the terms of devise or bequest and other terms ignored. (*Johnson v. Muller,* 149 Kan. 128, 86 P. 2d 569.) The court must put itself as nearly as possible in the situation of the testator at the time he made the will and from a consideration thereof and the language used in every part of the will, determine the purposes and intentions of the testator (*Dyal v. Brunt,* 155 Kan. 141, 123 P. 2d 307). All of the above rules are only phases of the fundamental rule that the intention of the testator is to be gathered from the will as a whole and that intention must prevail if it is consistent with the rules of law (*Zabel v. Stewart,* 153 Kan. 272, 109 P. 2d 177). The above cases are illustrative. Many others of like effect might be cited. It is also to be borne in mind that a will speaks from the time of the testator's death, unless it plainly shows a contrary intention, and is to be construed as operating according to conditions then existing. (69 C. J. 126; 28 R. C. L. 234; see, also, G. S. 1941 Supp. 59-613 as bearing thereon.)" (pp. 496, 497.)

In addition to the cases cited in the foregoing quotation, see, also, *In re Estate of Works,* 168 Kan. 539, 213 P. 2d 998; *In re Estate of Thompson,* 161 Kan. 641, 171 P. 2d 294; *Calkin v. Wallace,* 160 Kan. 760, 165 P. 2d 224; *Bierer v. Bierer,* 121 Kan. 57, 245 Pac. 1039; *Brown v. Brown,* 101 Kan. 335, 166 Pac. 499; and *Thornberry v. Fletcher,* 91 Kan. 744, 139 Pac. 391, where rules of construction were stated and applied.

Turning to the Will in question, we have little difficulty in concluding that the plain and unequivocal language used therein compels a conclusion that Jack Gibson was required to physically occupy the premises as his home in order to preserve his rights to possession under the Will. To hold otherwise would require us to ignore the plain and ordinary meaning of the words "as long as they, or either of them, continue to occupy the same as their home" used in the Will and read into it a meaning contrary to that expressed therein with complete definiteness and certainty.

In arriving at the foregoing conclusion it has been unnecessary to

resort to rules of construction. While the rules of construction heretofore quoted are correct under Kansas law, they have no application here. Such rules do not become operative unless it appears that the terms of a will are so uncertain and ambiguous as to require judicial construction.

Once it has been determined from an examination of the instrument as a whole that there is no ambiguity or uncertainty in the language of a will, its terms must be given full force and effect. Where the intention of the testator is clearly and unequivocally expressed, the words and phrases used in the will being clear in themselves, the court may not depart from the obvious meaning of such words and phrases in determining the intention of the testator as therein expressed.

To adopt appellants' argument would result not only in excision of the words "continue to occupy" as used in the Will but in a reformation of the instrument itself. Where the terms of a will are clear and not inconsistent with other provisions a court has no power, either by the process of excision (*Sipes v. Pessemier,* 144 Kan. 300, 58 P. 2d 1085; *In re Estate of Cline,* 170 Kan. 496, 227 P. 2d 157), or by some other method of reformation (*Holmes v. Campbell College,* 87 Kan. 597, 125 Pac. 25; *Dye v. Parker,* 108 Kan. 304, 194 Pac. 640; *Hodges v. Lanyon,* 108 Kan. 407, 411, 195 Pac. 882; *Dyal v. Brunt,* 155 Kan. 141, 123 P. 2d 307; *In re Estate of Hill,* 162 Kan. 385, 394, 176 P. 2d 515), to reform or make a will for a testatrix otherwise than she saw fit to make it. (*In re Estate of Reynolds,* supra.)

The point of law herein presented is identical with that in the case of *In re Estate of Reynolds,* supra, which controls this decision.

An examination (or analysis, or survey) of the Will in question in its entirety discloses that the testatrix knew how to create a life estate because immediately following the provision in question she devised "To my beloved husband, Harry E. Johnston, a life estate in and to . . ." a half section of land in Edwards County. Further survey of the instrument discloses that she clearly knew how to leave a fee title to others. In her Will she made twenty different dispositive provisions leaving real and personal property to various devisees and legatees and gave directions concerning the same without being inconsistent or vague in any respect.

Inasmuch as it has been stipulated that Jack Gibson has not occupied the premises in question as his home for approximately five years immediately prior to the time of trial, with the exception

of one day, and that his right to the possession of said premises was based upon a *claim* to said premises as his home, we conclude that the condition of continued occupancy specified in the Will has not been met and the trial court did not err in its finding and conclusion that the plaintiff (appellee) was entitled to possession of the quarter section of land in question and in entering judgment thereon.

The judgment of the lower court is affirmed.

FATZER, J., not participating.